[No. S057534. Jan. 5, 1998.]

THE PEOPLE, Plaintiff and Appellant, v.
REGINALD EUGENE WILLIAMS, Defendant and Respondent.

## COUNSEL

Gil Garcetti, District Attorney, George M. Palmer, Acting Head Deputy District Attorney, Patrick D. Moran and Joseph N. Sorrentino, Deputy District Attorneys, for Plaintiff and Appellant.

Frank Duncan for Defendant and Respondent.

## OPINION

**MOSK, J.**—Penal Code section 1385, subdivision (a) (hereafter Penal Code section 1385(a)), provides in pertinent part: "The judge or magistrate may . . . of his or her own motion . . . , and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. . . ."

In *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (hereafter sometimes *Romero*), we explained that the "power to dismiss an action," on a trial court's own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), "includes the lesser power to strike . . . allegations" or vacate findings "relevant to sentencing, such as the allegation" or finding "that a defendant has prior felony convictions." (13 Cal.4th at p. 504; accord, *id.* at p. 524, fn. 11.)

In *Romero*, we proceeded to hold that, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), a trial court may strike an

allegation or vacate a finding under the so-called "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12)[1] that a defendant has previously been convicted of a "serious" and/or "violent" felony as defined therein. (*People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 504.) We also held that an appellate court must review such a ruling for abuse of discretion. (*Ibid.*)

In this cause, we shall further consider how trial and appellate courts should undertake to rule and review in this area.

I

On April 19, 1995, in the Superior Court of the County of Los Angeles, the district attorney filed an information against Reginald Eugene Williams.

In a single count, the district attorney charged that, on or about February 9, 1995, Williams committed the felony of driving a vehicle under the influence of an alcoholic beverage and/or a drug—specifically, as was otherwise disclosed, phencyclidine or PCP—in violation of Vehicle Code section 23152, subdivision (a).

In connection therewith, the district attorney made various allegations, including the following.

In order to charge the offense of driving under the influence, which is alternatively a misdemeanor or a felony (see Veh. Code, § 23160 et seq.), as the latter rather than the former, the district attorney alleged, pursuant to Vehicle Code section 23175, that, within the preceding seven years, Williams had suffered three convictions for separate incidents of the same offense, two in 1991 and one in 1992.

In order to enhance any sentence of imprisonment, the district attorney alleged, pursuant to Penal Code section 667.5, subdivision (b), that (1) following a 1982 conviction, Williams served a prior prison term for the felony of rape (*id.*, § 261); (2) following a 1988 conviction, he served a prior prison term for the felony of possession of a firearm by a convicted felon (*id.*, § 12021, subd. (a)(1)); and (3) following a 1989 conviction, he served another prior prison term for another felony of possession of a firearm by a convicted felon.

Lastly, in order to bring the cause within the Three Strikes law, the district attorney alleged, pursuant to that scheme (Pen. Code, §§ 667, subds. (b)-(i),

---

[1] Penal Code section 667, subdivisions (b) through (i), is the codification of the Three Strikes law's legislative version (Stats. 1994, ch. 12, § 1). Penal Code section 1170.12 is the codification of its initiative version (Prop. 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994)). The two are "nearly identical." (*People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 504.)

1170.12), that Williams had previously been convicted of two serious and/or violent felonies, as follows: (1) in 1982, he was convicted of the felony of attempted robbery (Pen. Code, §§ 211, 664), which was at least serious (*id.*, § 1192.7, subd. (c), including subd. (c)(19)); and (2) also in 1982, he was convicted of the felony of rape, which was both serious (*id.*, § 1192.7, subd. (c)(3)) and violent (*id.*, § 667.5, subd. (c)(3)).

Arraigned on the information, Williams pleaded not guilty to the charge with a denial of the allegations.

The cause was later called for trial by jury. Prior to trial, Williams moved the superior court, under Penal Code section 17, subdivision (b)(3) (hereafter Penal Code section 17(b)(3)), which authorized it to "declare[]" an alternative misdemeanor-felony offense to be a misdemeanor when it "grants probation to a defendant without imposition of sentence," to make such a declaration as to the offense of driving under the influence. The People opposed on grounds including that such a declaration was inappropriate in light of the circumstances and, in any event, could not be made prior to sentencing. The superior court denied the motion without prejudice to its renewal after the preparation and submission of a probation officer's report. It continued commencement of trial.

Subsequently prepared and submitted, the probation officer's report described the circumstances of the offense, to the effect that, on the afternoon of February 9, 1995, Williams, who was then 32 years of age, was driving a vehicle on the streets of Los Angeles under the influence of PCP; he was stopped by a police officer; he smelled of the drug, stared blankly, was sweating slightly and grinding his teeth; seven or eight times he was asked by the officer to present his driver's license, and seven or eight times he replied, "How are you doing sir?"; he seemed to be confused, disoriented, and jumpy; he was arrested.

The probation officer's report related Williams's prior record.

As to Williams's juvenile history, so far as it was available, the probation officer's report may be read to reflect the following: (1) a 1976 arrest for burglary (Pen. Code, § 459) with a request for the filing of a petition for an adjudication of wardship (Welf. & Inst. Code, § 602) based on attempted burglary (Pen. Code, §§ 459, 664); (2) another 1976 arrest for burglary with another request for the filing of a wardship petition, this one apparently based on burglary; (3) yet another 1976 arrest for burglary with yet another request for the filing of a wardship petition, this one based on theft (*id.*, § 484); and (4) a 1979 arrest for burglary with a request for a wardship

petition apparently based on burglary. It appears that there was at least one adjudication of wardship for an unidentified offense with a commitment to a juvenile camp.[2]

As to Williams's adult history, the probation officer's report may be read to reflect the following: (1) a 1981 conviction for the misdemeanor of burglary with probation along with commitment to jail; (2) a 1982 conviction for the felony of attempted robbery—as alleged in the information—with probation along with commitment to jail; (3) a 1982 conviction for the felony of rape with commitment to prison—as also alleged in the information—and parole in 1986; (4) a 1987 violation of parole as to the 1982 rape conviction with commitment to prison; (5) a 1988 conviction for the felony of possession of a firearm by a convicted felon with commitment to prison —as alleged in the information; (6) a 1988 violation of parole based on the 1988 firearm-possession conviction with commitment to prison and parole in 1989; (7) a 1989 conviction for the felony of possession of a firearm by a convicted felon with commitment to prison—as alleged in the information; (8) a 1989 violation of parole based on the 1989 firearm-possession conviction with commitment to prison and parole in 1990; (9) a 1990 violation of parole apparently as to the 1989 firearm-possession conviction with commitment to prison and parole in 1991; (10) a 1991 conviction for the misdemeanor of driving under the influence—as alleged in the information—with probation; (11) another 1991 conviction for the misdemeanor of driving under the influence—as also alleged in the information—this one with suspension of driver's license; (12) a 1991 conviction for the misdemeanor of driving with driver's license suspended (Veh. Code, § 14601.1) with probation; (13) a 1992 conviction for the misdemeanor of driving under the influence—as alleged in the information—with commitment to jail and/or imposition of a fine; (14) a 1992 arrest for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) leading, apparently, to revocation of parole as to the 1989 firearm-possession conviction with commitment to prison; (15) a 1995 conviction for the misdemeanor of driving without a driver's license (Veh. Code, § 12500, subd. (a)) with imposition of a fine; (16) a 1995 conviction for the misdemeanor of possession of a controlled substance (Health & Saf. Code, § 11377) with probation along with commitment to jail; and (17) a 1995 conviction for the misdemeanor of willful infliction of corporal injury on a spouse or cohabitant resulting in a traumatic condition (Pen. Code, § 273.5)—so-called "spousal battery"—with commitment to jail.

---

[2]The district attorney did not allege that the apparent adjudication of wardship for the unidentified offense amounted to a prior serious and/or violent felony conviction. (Pen. Code, §§ 667, subd. (d)(3), 1170.12, subd. (b)(3); see also *People v. Davis* (1997) 15 Cal.4th 1096, 1103 [64 Cal.Rptr.2d 879, 938 P.2d 938] [declining to decide whether an adjudication of wardship for "residential burglary" may constitute a prior serious and/or violent felony conviction].)

In addition, the probation officer's report related Williams's personal history. Among other things, it noted that he had had a substance abuse problem since he was nine years of age; he apparently recognized the fact and stated a desire to change; but he did not follow through in efforts to bring the situation under control. It also noted that he was unemployed; he lived alone; he had cohabited with a woman for five or six years, and had two children by her, one of whom was disabled; and he wished to receive probation in order to help care for this child.

The probation officer's report recommended that, if Williams were convicted of the felony of driving under the influence, he should, among other things, be denied probation, sentenced to the upper term, and committed to prison. It evaluated him as a "clear and present danger to the community and to himself" because he had "become a habitual traffic offender." It found no circumstances in mitigation. By contrast, it found three circumstances in aggravation: (1) his offense "involved the threat of great bodily harm"; (2) his "prior conviction[s] as a[n] adult are numerous"; and (3) he "has served prior prison terms."

Williams again moved the superior court, impliedly under Penal Code section 17(b)(3), to declare the offense of driving under the influence to be a misdemeanor rather than a felony. In the alternative, he suggested that it strike one of the two allegations under the Three Strikes law that he had previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a). He evidently did so in order to reduce the maximum sentence under the scheme for a conviction for the felony of driving under the influence from a term of imprisonment for 25 years to life to one for 6 years. For a conviction of the felony of driving under the influence outside the scheme, the term of imprisonment was sixteen months, two years, or three years—when, as here, there were at least three prior convictions of the same offense as either a misdemeanor or a felony. (See Veh. Code, § 23175, subd. (a); Pen. Code, § 18.) But for a conviction of the felony of driving under the influence within the scheme, if there was one prior serious and/or violent felony conviction, the term of imprisonment was twice the term of imprisonment otherwise provided (Pen. Code, §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), to wit, two and two-thirds years, four years, or six years. And if there were at least two prior serious and/or violent felony convictions, the term of imprisonment was an indeterminate one for life, with a minimum of 25 years. (*Id.*, §§ 667, subd. (e)(2)(A)(ii), 1170.12, subd. (c)(2)(A)(ii); see Veh. Code, § 23175, subd. (a); Pen. Code, § 18.)

At the hearing, the superior court stated that it was not inclined to declare the offense of driving under the influence to be a misdemeanor rather than a

felony "because of the nature of [Williams's] criminal record and the fact that . . . this is a driving under the influence of PCP," and that even if it had been, it could not do so "until sentencing anyway." But it also stated that "this might be an appropriate case to strike a prior, and then treat it as a two-strike case" "because of the age of those prior serious felonies, burglaries, and one robbery,"[3] which Williams committed about 13 years earlier when he was about 20 years of age, and "because of . . . the lack of any kind of violence related crimes from then until now . . . ."

In response, Williams immediately decided to withdraw his plea of not guilty to the charge with a denial of the allegations, and to plead guilty with an admission thereof instead. The superior court advised him of the maximum sentence that it could impose—a term of imprisonment for 28 years to life, comprising a minimum of 25 years for the felony of driving under the influence and 1 year additionally and consecutively for each of the 3 prior prison terms. It impliedly gave him leave to withdraw his original plea of not guilty with denials. He did so. It expressly allowed him to enter a new and different plea of guilty with admissions. He did so by means of a so-called "open plea," under which he was not made any promises. In response thereto, it expressly found him guilty and impliedly determined the allegations to be true.

Straightway, the superior court proceeded to address Williams's motion under Penal Code section 17(b)(3) to declare the offense of driving under the influence to be a misdemeanor rather than a felony, and his suggestion that it strike one of the two allegations under the Three Strikes law that he had previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a). It inquired whether it could use the probation officer's report for that purpose, and he responded in the affirmative. It denied the motion. It explained that, "because of your . . . record, I don't think this is an appropriate case to reduce this matter to a misdemeanor pursuant to section 17(b) . . . ." But it ruled in accordance with the suggestion that it would strike—now vacate—one of the two allegations—now findings—under the Three Strikes law. Rejecting an argument by the People on the threshold issue, it stated: "I currently think that I . . . have the authority to strike a prior under 1385 of the Penal Code." (At that time, prior to *Romero*, the existence *vel non* of such authority was an open question.) Rejecting an argument by the People on the merits, it stated: "[Williams's] prior convictions for the serious felonies were in 1982. It would appear, though, since that time he has run afoul with [*sic*] the law many times, but not for crimes involving actual violence. We always

---

[3] The superior court misspoke: The "prior serious felonies" to which it referred were attempted robbery and rape.

have a situation when somebody's driving under the influence, it could have been violence. [¶] However, luckily, nothing happened in this case." It then ordered the finding relating to the prior conviction for the serious felony of attempted robbery vacated: "That leaves us now with a two-strike case, . . . plus the one-year enhancements for the priors." Contrary to the requirement of Penal Code section 1385(a), however, it failed to set forth its reasons in an order entered on the minutes.

Turning to sentencing, the superior court, among other things, imposed on Williams a term of imprisonment for nine years. It chose the upper term of imprisonment for three years for the felony of driving under the influence for the reasons stated in the probation officer's report. It doubled that term to six years under the Three Strikes law because there was one prior serious and/or violent felony conviction. It added one year for each of the three prior prison terms, each to run consecutive to the term for driving under the influence and to each other. It apparently declined to vacate any of the underlying findings under Penal Code section 1170.1, subdivision (h), which granted it the authority to do so "if," among other things, "it determine[d] that there [were] circumstances in mitigation of the additional punishment," because of the "same factors that led [it] to deny the request under 17(b) to reduce act [*sic*] as far as factors in aggravation." Noting the presence of two members of Williams's family, it stated: "[T]he fact that you've got [them] here . . . shows me they still love you and still support you, in spite of the disappointment you obviously are to them. What you've done is, you've let down them [*sic*]. It's time for you to start doing something productive in your life."

The People filed a notice of appeal pursuant to Penal Code section 1238, subdivision (a)(10), against the "imposition of" what they claimed to be "an unlawful sentence," specifically, the "imposition of a sentence based upon an unlawful order . . . which strikes . . . the effect of . . . [a] prior conviction."

In a judgment announced in an opinion not certified for publication, Division Five of the Second Appellate District of the Court of Appeal reversed the superior court's judgment in part and affirmed it in part. In a unanimous opinion,[4] having raised the issue itself, it concluded that the superior court's order vacating the finding under the Three Strikes law that Williams had previously been convicted of the serious felony of attempted robbery, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), was subject to review for abuse of discretion, and that such order was erroneous under that standard in light of Williams's "extraordinary record of prior criminality." Proceeding to disposition, it stated:

---

[4]Which somewhat curiously does not even mention *Romero*, then recently decided.

"Since [Williams] entered an open plea, there is no need for remanding for reconsideration of the sentence. The trial court identified no mitigating circumstances and we can find none which would warrant striking the three prior prison terms enhancements. As a result, the trial court should simply order [him] to serve a 28 years-to-life sentence." Accordingly, it reversed the judgment, as pertinent here, to the extent that it imposed a sentence comprising a term of imprisonment for nine years, and remanded the cause with directions to impose one for twenty-eight years to life; in all other respects, it affirmed the judgment.

The Court of Appeal denied a petition for rehearing submitted by Williams. At the same time, it modified its original opinion on its own motion without change in judgment to delete the signature of one of the justices therefrom and to add a separate opinion by him in dissent. He stated: "I agree that the order imposing sentence should be set aside. I believe it should be set aside because the trial court neglected to set forth the reasons for the dismissal in a written order as required by the Supreme Court in [*Romero*]. I do not agree that we, as an appellate court, can go further and, in what amounts to an exercise of our discretion, as distinguished from a review of the trial's [*sic*] exercise of its discretion, deny the motion to strike and impose a different and more severe sentence." He concluded: "[W]e should do what the Supreme Court effectively did on analogous facts in *Romero*: Vacate the sentence and remand the matter to the trial court to proceed in accordance with the views expressed in *Romero*."

On Williams's petition, we granted review.

## II

In *Romero*, we held that a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a).

In *Romero*, in order to provide guidance both to the trial courts, which may make such rulings, and also to the lower appellate courts, which may review them, we restated the law, as follows:

". . . A court's discretion to strike [or vacate] prior felony conviction allegations [or findings] in furtherance of justice is limited. Its exercise must proceed in strict compliance with [Penal Code] section 1385(a), and is subject to review for abuse. . . .

" 'The trial court's power to dismiss an action under [Penal Code section 1385(a)], while broad, is by no means absolute. Rather, it is limited by the

amorphous concept which requires that the dismissal be "in furtherance of justice." As the Legislature has provided no statutory definition of this expression, appellate courts have been faced with the task of establishing the boundaries of the judicial power conferred by the statute as cases have arisen challenging its exercise. Thus, in measuring the propriety of [a] court's action . . . , we are guided by a large body of useful precedent which gives form to the above concept.

" 'From the case law, several general principles emerge. Paramount among them is the rule "that the language of [Penal Code section 1385(a)], 'in furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. . . ." . . . At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." . . .' . . . 'Courts have recognized that society, represented by the People, has a legitimate interest in "the fair prosecution of crimes properly alleged." . . . " '[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion.' . . ." ' . . .

"From these general principles it follows that a court abuses its discretion if it dismisses a case, or strikes [or vacates] a sentencing allegation [or finding], solely 'to accommodate judicial convenience or because of court congestion.' . . . A court also abuses its discretion by dismissing a case, or a sentencing allegation [or finding], simply because a defendant pleads guilty. . . . Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' . . .

■ "A court's discretionary decision to dismiss or to strike [or vacate] a sentencing allegation [or finding] under [Penal Code section 1385(a)] is also reviewable. '[W]here the court's action lacks reason it may be invalidated upon timely challenge.' . . . [Penal Code section 1385(a)] anticipates, and facilitates, appellate review with the requirement that '[t]he reasons for the dismissal must be set forth in an order entered upon the minutes.' . . . 'The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the *minutes* must reflect the reason "so that all may know why this great power was exercised." ' ' " (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at pp. 530-531, italics in original, citations omitted.)

■ In *Romero*, we recognized that the "concept" of "furtherance of justice" within the meaning of Penal Code section 1385(a) is " 'amorphous.' " (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 530.) In

so doing, we did no more and no less than we had to. Plainly, the words do not define themselves.

When we undertake to render Penal Code section 1385(a)'s concept of "furtherance of justice" somewhat more determinate, we may proceed by adopting one of two general orientations. Broadly speaking, we may seek "justice" outside the bounds of the scheme to which the defendant is subject—which here, of course, is the Three Strikes law. Or we may look for "justice" in that scheme's interstices, informed by generally applicable sentencing principles relating to matters such as the defendant's background, character, and prospects.[5]

To attempt to give content to the concept of "furtherance of justice" in Penal Code section 1385(a) by searching outside the scheme in question runs the risk of failure. In *Romero*, we had to acknowledge that what is "just" is formless. (*People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 530.) To be sure, "justice" is commonly defined as giving each person his due. (See, e.g., Plato, Res Publica (Burnet ed. 1952) Liber IV, pp. 433e12 to 434a1.) But it is not commonly agreed what is due each person. (E.g., Weinreb, *The Complete Idea of Justice* (1984) 51 U. Chi. L.Rev. 752.)

By contrast, to proceed by looking within the scheme in question, as informed by generally applicable sentencing principles, offers some prospect of success. The scheme itself constitutes the "letter" of the law. More than perhaps any other source, it may also suggest its "spirit." For even when it does not declare its purpose *in ipsissimis verbis*, it indicates its objective through its scope and operative terms. (See *Continental Ins. Co.* v. *Superior Court* (1995) 32 Cal.App.4th 94, 108 [37 Cal.Rptr.2d 843] [stating that the "scope of discretion always resides in the particular law being applied"]; *Choice-in-Education League* v. *Los Angeles Unified School Dist.* (1993) 17 Cal.App.4th 415, 422 [21 Cal.Rptr.2d 303] [same].)

Moreover, it is in fact by looking within the scheme in question, as informed by generally applicable sentencing principles, that we have actually proceeded. This is manifestly true as to the Three Strikes law. In *Romero*, we noted the balance, for present purposes, between the defendant's constitutional rights—which we suggested included the guaranties against disproportionate punishment of the Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution (see, e.g., *People* v. *Marshall* (1990) 50 Cal.3d 907, 938 [269 Cal.Rptr. 269, 790 P.2d 676])—and society's legitimate interests—which we stated embraced the fair prosecution of properly charged crimes. (See *People* v. *Superior Court*

---

[5]See, e.g., California Rules of Court, rule 410 et seq.

(*Romero*), *supra*, 13 Cal.4th at pp. 530-531.) We implied that, in that balance, no weight whatsoever may be given to factors extrinsic to the scheme, such as the mere desire to ease court congestion or, a fortiori, bare antipathy to the consequences for any given defendant. (See *id.* at p. 531.) We also implied that, in that same balance, preponderant weight must be accorded to factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects. (See *ibid.*)

We therefore believe that, in ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies. If it is striking or vacating an allegation or finding, it must set forth its reasons in an order entered on the minutes, and if it is reviewing the striking or vacating of such allegation or finding, it must pass on the reasons so set forth.

### III

Turning to the case at bar, we now consider the decision of the Court of Appeal. As indicated, the majority concluded that the superior court's order vacating the finding under the Three Strikes law that Williams had previously been convicted of the serious felony of attempted robbery, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), was unsound on the merits. For his part, the dissenting justice concluded that the order was ineffective on procedural grounds. The majority did not consider the question of ineffectiveness. The dissenting justice did not consider the question of unsoundness.[6]

In *People* v. *Orin* (1975) 13 Cal.3d 937 [120 Cal.Rptr. 65, 533 P.2d 193], we reviewed a similar superior court ruling both for its effectiveness (*id.* at

---

[6]Williams claims that, under *People* v. *Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040], the Court of Appeal erred by undertaking to review the superior court's order at all. We disagree. In *Scott*, we held only that *a party* cannot raise a "complaint[] about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons . . . for the first time on appeal." (*Id.* at p. 356.) We did not even purport to consider whether *an appellate court* may address such an issue if it so chooses. Surely, the fact that a party may forfeit a right to present a claim of error to the appellate court if he did not do enough to "prevent[]" or "correct[]" the claimed error in the trial court (*id.* at p. 353)

pp. 943-945) and also for its soundness (*id.* at pp. 945-951). We shall follow a similar course here.

On the question of the effectiveness of the superior court's order, we believe that the Court of Appeal dissenting justice was right to give a negative answer. In *Romero*, we held that, under "settled law," a ruling that is unaccompanied by reasons set forth in an order entered on the minutes, like that here, is simply "ineffective." (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 532.)

On the question of the soundness of the superior court's order, we believe that the Court of Appeal majority was right to give a negative answer.

■ To begin with, the Court of Appeal majority properly determined that the superior court's order was subject to review for abuse of discretion. This standard is deferential. (E.g., *People* v. *Williams* (1997) 16 Cal.4th 153, 210 [66 Cal.Rptr.2d 123, 940 P.2d 710]; *People* v. *Mayfield* (1997) 14 Cal.4th 668, 720 [60 Cal.Rptr.2d 1, 928 P.2d 485].) But it is not empty. Although variously phrased in various decisions (see *People* v. *Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977 [60 Cal.Rptr.2d 93, 928 P.2d 1171], quoting the wording in several opinions), it asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts (*People* v. *DeSantis* (1992) 2 Cal.4th 1198, 1226 [9 Cal.Rptr.2d 628, 831 P.2d 1210]; see *People* v. *Jackson* (1992) 10 Cal.App.4th 13, 22 [12 Cal.Rptr.2d 541]).

■ The Court of Appeal majority also properly determined that the superior court's order amounted to an abuse of discretion.

In light of the nature and circumstances of his present felony of driving under the influence, which he committed in 1995, and his prior conviction for the serious felony of attempted robbery and his prior conviction for the serious and violent felony of rape, both of which he suffered in 1982, and

does not compel the conclusion that, by operation of his default, the appellate court is deprived of authority in the premises. An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party. (E.g., *Canaan* v. *Abdelnour* (1985) 40 Cal.3d 703, 722, fn. 17 [221 Cal.Rptr. 468, 710 P.2d 268, 69 A.L.R.4th 915]; see, e.g., *People* v. *Berryman* (1993) 6 Cal.4th 1048, 1072-1076 [25 Cal.Rptr.2d 867, 864 P.2d 40] [passing on a claim of prosecutorial misconduct that was not preserved for review]; *People* v. *Ashmus* (1991) 54 Cal.3d 932, 975-976 [2 Cal.Rptr.2d 112, 820 P.2d 214] [same].) Indeed, it has the authority to do so. (See, e.g., *Canaan* v. *Abdelnour*, *supra*, 40 Cal.3d at p. 722, fn. 17.) True, it is in fact barred when the issue involves the admission (Evid. Code, § 353) or exclusion (*id.*, § 354) of evidence. Such, of course, is not the case here. Therefore, it is free to act in the matter. (See, e.g., *Canaan* v. *Abdelnour*, *supra*, 40 Cal.3d at p. 722, fn. 17.) Whether or not it should do so is entrusted to its discretion. (*Ibid.*)

also in light of the particulars of his background, character, and prospects, which were not positive, Williams cannot be deemed outside the spirit of the Three Strikes law in any part, and hence may not be treated as though he had not previously been convicted of those serious and/or violent felonies.

There is little about Williams's present felony, or his prior serious and/or violent felony convictions, that is favorable to his position. Indeed, there is nothing. As to his present felony: It is a conviction of driving under the influence that followed three other convictions of driving under the influence; "the existence of such convictions reveals that [he] had been taught, through the application of formal sanction, that [such] criminal conduct was unacceptable—but had failed or refused to learn his lesson" (*People* v. *Gallego* (1990) 52 Cal.3d 115, 209, fn. 1 [276 Cal.Rptr. 679, 802 P.2d 169] (conc. opn. of Mosk, J.)). As to his prior serious and/or violent felony convictions: The record on appeal is devoid of mitigation.

Similarly, there is little favorable about Williams's background, character, or prospects. We do not ignore the fact that he apparently had had a stable living arrangement with a woman, had expressed a desire to help care for their disabled child, and was still loved, and supported, by his family. But neither can we ignore the fact that he was unemployed and did not follow through in efforts to bring his substance abuse problem under control. Certainly, that he happened to pass about 13 years between his prior serious and/or violent felony convictions and his present felony, and proceeded from about 20 years of age to 32, is not significant. He did not refrain from criminal activity during that span of time, and he did not add maturity to age. Quite the contrary. In those years, he was often in prison or jail; when he was not, he violated parole and, apparently, probation, and committed the offenses that resulted in his convictions for the following: the felony of possession of a firearm by a convicted felon; another felony of possession of a firearm by a convicted felon; the misdemeanor of driving under the influence; another misdemeanor of driving under the influence; the misdemeanor of driving with driver's license suspended; yet another misdemeanor of driving under the influence; the misdemeanor of driving without a driver's license; the misdemeanor of possession of a controlled substance; and, lastly and notably, the misdemeanor of spousal battery. The superior court evidently believed that Williams was not the same man when he committed his present felony in 1995 at 32 years of age as he had been when he suffered his prior serious and/or violent felony convictions in 1982 at 20. In this regard, it asserted that there were no "crimes involving actual violence" in the interim. It was wrong. He had not changed. We put to the side his two convictions for the felony of possession of a firearm by a convicted felon. We also put to the side the apparent revocation of his parole following his

arrest for assault with a deadly weapon. But the fact remains, not more than three months before he committed his present felony, he committed the misdemeanor of spousal battery—which is plainly a "crime[] involving actual violence."

In view of the forgoing, the superior court's order fell outside the bounds of reason under the applicable law and the relevant facts.

Finally, in considering the decision of the Court of Appeal, we must obviously pass on its disposition. Without even mentioning *Romero*, the majority reversed the superior court's judgment as to sentence. By contrast, bound by *Romero*'s authority, the dissenting justice would have vacated the judgment in that part and remanded the cause. We believe that the dissenting justice was largely right and that the majority was altogether wrong—the panel should have vacated the judgment in its entirety. In *Romero*, we held, in words directly applicable here, that the "conclusion that the [superior] court's order was ineffective necessarily affects the disposition. At the time [Williams] pled guilty, the [superior] court had indicated its willingness to consider striking [one of] the prior felony conviction allegations. This factor manifestly influenced [his] decision to plead guilty. Under these circumstances, the appropriate remedy is to vacate the judgment, to permit [him] to withdraw his plea, and otherwise to proceed in conformity with" the law. (*People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 532.)[7]

---

[7]At oral argument, the People expressed the position that, "in fairness, . . . [Williams] should be allowed to withdraw his plea" of guilty to the charge with an admission of the allegations. We agree. Whether to grant or deny a defendant permission to withdraw a plea of guilty must be decided "in the interest of promoting justice." (*People* v. *Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796-797 [114 Cal.Rptr. 596, 523 P.2d 636].) Generally, it is the trial court that makes the decision. (See *ibid.*) That is because it is the trial court that deals with pleas in the first instance. But here it is we who shall do so. For we have a record on appeal that is altogether adequate for the task. As noted, the superior court stated that "this might be an appropriate case to strike a prior," and in response Williams immediately decided to withdraw his original plea of not guilty with a denial of the allegations. *Post hoc, propter hoc:* The record on appeal compels the inference not through a logical fallacy but as a factual reality. The superior court should not have made its statement—which at oral argument the People conceded was a "powerful inducement"—because this was in fact *not* an "appropriate case to strike a prior." Hence, Williams should not have been subjected to its influence. It follows that, "in the interest of promoting justice" (*ibid.*), he should be allowed to return to the status quo ante by withdrawing his plea of guilty with admissions, should he so choose.

In *Romero*, we implied that, on remand there, the superior court could rule as it had originally. (See *People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 532.) On remand here, if the material and information set out again prove to be the same as that set out before, the superior court cannot rule as it did originally, inasmuch as its order was erroneous. But if such material and information turn out to be different, it is not bound.

## IV

For the reasons stated above, we conclude that we must affirm the judgment of the Court of Appeal to the extent that it sets aside the superior court's order vacating the finding under the Three Strikes law that Williams had previously been convicted of the serious felony of attempted robbery, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a). We must otherwise reverse the judgment of the Court of Appeal with directions to vacate the judgment of the superior court and remand the cause to that court for proceedings not inconsistent with the views expressed in this opinion.

It is so ordered.

Kennard, J., Werdegar, J., and Brown, J., concurred.

**BAXTER, J.,** Conurring and Dissenting.—I concur in the judgment reversing the judgment of the Court of Appeal and remanding this matter to the superior court for further proceedings. I dissent from the judgment to the extent that it requires the trial court to permit defendant to withdraw his plea in those proceedings.

The majority correctly concludes that the trial court abused its discretion when it set aside its finding that defendant had committed the prior serious felony of attempted robbery. As the majority explains, defendant's criminal record establishes beyond question that he is a person who comes within the spirit of the "Three Strikes" law. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)[1] His criminal activity has continued unabated since his childhood except for those periods when he has been incarcerated. Contrary to the view of the trial court, he has committed a recent crime of violence, spousal battery. Moreover, while his repeated acts of driving while intoxicated by drugs or alcohol did not lead to injury or death, such conduct is proscribed and heavily punished when repeated because it creates a serious threat of injury to other drivers and their passengers, bystanders, and the intoxicated driver. This conduct should not be disregarded solely because it is not a "crime of violence" as that term is generally understood. Driving while intoxicated is a dangerous offense which often poses a threat of serious injury and thus may appropriately be considered in deciding whether punishment under the provisions of the Three Strikes law is warranted regardless of whether death or injury actually occurred. I therefore agree that defendant's conduct and the extended sentence mandated by that law are within the spirit of the Three Strikes law.

---

[1] All subsequent statutory references are to the Penal Code.

I also agree that the judgment imposed by the trial court must be reversed because the court failed to comply with the requirement of section 1385, subdivision (a), that the reason or reasons for exercising discretion to strike a prior felony conviction be set forth in a minute order. Because the court failed to do so, the order setting aside the finding that defendant had previously been convicted of attempted robbery was ineffective. (*People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 532 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*); *People* v. *Orin* (1975) 13 Cal.3d 937, 944 [120 Cal.Rptr. 65, 533 P.2d 193].) Since defendant was a person within the provisions of the Three Strikes law, the lesser sentence imposed on defendant was unauthorized. For that reason too the superior court judgment must be reversed.

I depart company from the majority, however, when it holds that the trial court must permit defendant to withdraw his plea. I recognize that this relief was granted in *Romero*. In retrospect, however, I believe the court erred in doing so and thereby granting that defendant a benefit not granted to other defendants whose guilty pleas are based only on a hope or anticipation of leniency in sentencing, but to whom no promises of leniency have been made.

Had the prosecutor or the court given defendant any assurance that the prior conviction would be stricken or had any other promises of leniency been made which are not to be honored, the promise would have to be kept or the defendant be permitted to withdraw the plea of guilty. (§ 1192.5.) Due process requires no less. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello* v. *New York* (1971) 404 U.S. 257, 262 [92 S.Ct. 495, 499, 30 L.Ed.2d 427].) A guilty plea "is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." (*Brady* v. *United States* (1970) 397 U.S. 742, 748 [90 S.Ct. 1463, 1469, 25 L.Ed.2d 747], fn. omitted.)

When leave to withdraw a plea is not required by statute or mandated by constitutional considerations, however, whether to permit a defendant to withdraw the plea is a decision committed to the sound discretion of the trial court. Unless the defendant was not represented by counsel when the plea was entered, good cause must be shown by clear and convincing evidence before the court may permit the plea to be withdrawn when a defendant seeks to do so before judgment. Mistake, ignorance, or other factor which

overcomes the exercise of free judgment by the defendant is "good cause." (§ 1018; *People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250].) The requirement of good cause shown by clear and convincing evidence is not lessened when a motion to withdraw a plea is made after judgment. (*People* v. *Castaneda* (1995) 37 Cal.App.4th 1612, 1617 [44 Cal.Rptr.2d 666].)

"With respect to postjudgment motions to withdraw a guilty plea, the courts have required a showing essentially identical to that required under Penal Code section 1018: '[W]here on account of duress, fraud, or other fact overreaching the free will and judgment of a defendant he is deprived of the right of a trial on the merits, the court in which he was sentenced may after judgment and after the time for appeal has passed, *if a properly supported motion is seasonably made*, grant him the privilege of withdrawing his plea of guilty . . . . It should be noted, however . . . that this exceptional remedy applies . . . only upon a strong and convincing showing of the deprivation of legal rights by extrinsic causes.' (*People* v. *Schwarz* [(1927)] 201 Cal. [309,] 314-315 [257 P. 71], italics added.) Again the decision to grant the motion lies within the trial court's discretion." (*People* v. *Castenada, supra,* 37 Cal.App.4th at p. 1617.) "Post plea remorse" brought on by dissatisfaction with the sentence imposed is not good cause for withdrawal of a plea, however. "As a general rule, a plea of guilty may be withdrawn 'for mistake, ignorance or inadvertence or any other factor overreaching defendant's free and clear judgment.' [Citations.] [¶] . . . . [When a defendant] enters a guilty plea hoping for leniency which is not forthcoming . . . [the] situation has traditionally been held not to constitute a ground for the court to exercise its discretion in allowing the withdrawal of a guilty plea." (*People* v. *Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 797-798 [114 Cal.Rptr. 596, 523 P.2d 636] (*Giron*), fn. omitted.)

*Romero* went too far, therefore, in directing that the defendant there be permitted to withdraw his plea. The majority perpetuates the error here.

The majority concedes that no promises were made in this case. It must do so because the court made that clear, stating to counsel in defendant's presence: "No promises are being made. I indicated to him that in appropriate cases like this, I have in fact struck a prior before today. However, I'm not promising that." In taking the plea, the prosecutor expressly warned the defendant that the plea would be "an open plea, which means the court has not made you any promise what sentence you could receive and, therefore, depending upon what the court does at the time of sentencing, it could be something less than 28 years to life, but of course, that is the maximum." Moreover, the judge made an express finding that no promises had been made.

Since there were no unkept promises by the prosecutor or the court, and defendant clearly knew the full range of possible punishment, the record does not reflect any statutory or constitutional compulsion to permit him to withdraw his plea. The majority relies therefore on the court's "inherent power," a discretionary power, to permit withdrawal of a plea. The court's discretionary power to permit withdrawal of a plea is not as broad as the majority implies, however. First, it is a power vested in the trial court in the first instance. Second, it is a limited power which may be exercised only on clear and convincing evidence of good cause. If all of the factors relevant to determining good cause have been developed and are reflected in the record, an appellate court may be able to determine without remand that it would be an abuse of discretion were the trial court to deny a postjudgment motion to withdraw a guilty plea. That is not the case here.

Whether this defendant entered the plea in reliance on, or was substantially influenced in deciding to plead guilty, by the judge's comment regarding his inclination to strike one prior conviction or simply hoped that the court would do so cannot be determined on this record. Whether a factor overreaching a defendant's judgment induced a guilty plea presents a factual question on which both the defendant and prosecutor are entitled to offer evidence. The judge's comment alone is insufficient to establish that an overreaching factor led to defendant's entry of a guilty plea he would not otherwise have entered. At best the record supports an inference that the trial court's comment regarding its inclination to strike one prior conviction influenced defendant. Certainly there is no clear and convincing evidence here that the comment did so.

The majority, without reference to the well-established law circumscribing the power of the court to permit withdrawal of a guilty plea, holds that "in fairness" defendant should be permitted to withdraw his plea. It does so in the apparent assumption that the trial court's comments induced the plea, but that assumption is not supported by any evidence. The majority holds in effect that, as a matter of law, such comments about a court's inclinations regarding sentence induce pleas which a defendant may withdraw if the anticipated sentence is not imposed. I cannot join in either the assumption or the holding.

I agree that a decision to permit withdrawal of a plea should be decided in the interest of justice. (*Giron, supra*, 11 Cal.3d at pp. 796-797.) I also agree, in light of the comments made by the judge before defendant entered his plea, that this may be a case in which the usual rule disfavoring withdrawal of a plea solely because anticipated leniency was not forthcoming should not be applied. I do not agree, however, that this court may order the trial court

to permit defendant to withdraw the plea. The majority accepts the concession by the People at oral argument that the court's statement was a "powerful inducement," but defendant has not presented evidence to that effect and the prosecutor who was present at the time the plea was entered has not been afforded the opportunity to offer contrary evidence.

Based on this record, this court is in no position to rule that it would be an abuse of discretion to deny a motion to withdraw the plea, yet it concludes that it is proper to decide the question itself. It thereby usurps a power vested in the trial court.

Since the sentence imposed in this case was unauthorized, the judgment of the superior court must be reversed and the matter remanded for a new probation and sentence hearing. At that hearing defendant may move to withdraw his plea and the trial court may hear his reasons and any opposition from the local prosecutor.

To the extent that the disposition ordered by the majority differs, I dissent from the judgment.

George, C. J., and Chin, J., concurred.

Appellant's petition for a rehearing was denied February 25, 1998, and the opinion was modified to read as printed above.