Filed 12/24/20  P. v. Tumanyan CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B299502 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA090256) |
| v. | |
| ABRAHAM TUMANYAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zackey, Judge.  Affirmed as modified.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Susan Sullivan Pithey, Assistant Attorneys General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Abraham Tumanyan (defendant) appeals from the judgment entered upon his conviction of assault with a deadly weapon. He contends that the trial court abused its discretion in denying his motions to strike a five-year recidivist enhancement pursuant to Penal Code section 667, subdivision (a)(1),[1] and one or both his prior serious or violent felony convictions alleged under the "Three Strikes" law. Defendant also contends, and respondent agrees, that the trial court should have imposed only one of the five-year enhancements, as the two prior convictions on which they were based had not been brought and tried separately. Finding no merit to defendant's other contentions, we vacate one of the five-year enhancements, but otherwise affirm the judgment.

## BACKGROUND

Defendant was charged with assault with a deadly weapon, a knife, upon his father, Khachik Tumanyan,[2] in violation of section 245, subdivision (a)(1). Defendant was also charged with the allegation that he personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a). Pursuant to section 667, subdivision (a)(1), and the Three Strikes law, sections 667, subdivisions (b)-(j), and 1170.12, subdivision (b), it

---

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.

[2]     As defendant and his parents all share the same surname, we refer to defendant's parents by their first names to avoid confusion. We mean no disrespect.

was alleged that defendant had suffered two prior robbery convictions.  It was further alleged that defendant had served a prior prison term within the meaning of section 667.5, subdivision (b).

A jury convicted defendant as charged with assault with a deadly weapon, and found true the great bodily injury allegation. Defendant admitted the prior conviction allegations.  On June 24, 2019, the trial court denied defendant's *Romero* motion to strike prior convictions.[3]  The court also denied defendant's motion to strike one of the two section 667, subdivision (a)(1), five-year recidivist enhancements.  Defendant was sentenced to a third-strike term of 25 years to life in prison, plus three years for the great bodily injury enhancement, in addition to the two five-year recidivist enhancements.  The trial court struck the prior prison term allegation, calculated presentence custody credit as a combined total of 604 days, and ordered defendant to pay the minimum fine and court fees.

Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

On January 15, 2018, defendant stabbed Khachik several times with a kitchen knife, shortly after the two men had a conversation in the living room, when "all of a sudden" defendant looked "weird" and "detached."  He shook his head, quickly went into the kitchen and returned with a knife, screaming, "There is a

---

[3]     See *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497  (*Romero*).

snake.  There is a snake."  Defendant leaned over the seated Khachik and stabbed him in the chest while yelling, "Snake. Snake."  Khachik called for his wife Anait who pulled defendant back, and slapped his face.  Defendant appeared to be startled and to wake up as though from a dream.  Defendant dropped the knife and ran out of the house through the front door.  Anait called 911.  Khachik was taken to the hospital where he underwent surgery, and remained for 10 days.

Khachik and Anait both testified that defendant had mental health issues.

Defendant was arrested two days after the stabbing and was then interviewed by Los Angeles Police Detective Frank DePerno.  A recording of the interview was played for the jury. During the interview defendant gave rambling answers to the detective's questions, some responsive and others not, and he volunteered thoughts as they came to him.  Defendant claimed not to remember much, because he had consumed "a lot of beers and stuff."  He had also not been able to take all of his medications due to insurance issues, and because family members kept stealing his paperwork, his green card and his social security card.  He was tired of his family, who had money which they did not give to him.  He claimed that they stole everything he got.  Defendant had been released from prison for the armed robberies of a gas station and a 7-Eleven store, in April 2017.  He asked his family for money, and he claimed that he was promised $1,000 or $2,000 per month, which was paid for only two months.

Defendant admitted he "probably stabbed" Khachik, but did not know how many times.  Defendant denied that they had been arguing, and claimed that they were merely talking.  He

4

said they had argued a few days earlier about money, but his description of the argument became a description of the conversation that led to the stabbing. Defendant told Khachik that he would not take the family to court if Khachik gave him $500. When Khachik refused, defendant became upset, and although he intended to leave, he instead went into the kitchen, grabbed a knife and returned to the living room, where he stabbed his father. Defendant explained: "I think my illness kicked in and made me do what I had to do." Defendant said he had been diagnosed with schizoaffective disorder, paranoia type 2, and probably bipolar disorder.

Defendant told Detective DePerno that his father "did that to himself. He knows that. He knows I have [a] mental illness, and he's not supposed to fuck with my head like that. Not only the money, he did a lot of things." "He put the snake in my garage." Defendant knew his father had put it there and that the snake did not crawl in by itself, because only his father and uncle have keys to the garage.

During the interview defendant said that his father had molested him, had put poison in his closet, had attempted to manipulate the denial of defendant's Social Security benefits, and that everyday he told defendant to "get the fuck out of" there. Defendant said that his father, uncle, and cousin had all abused him, and the family had his brother killed. Defendant agreed that his father deserved what happened. Defendant said he had wanted to hurt his father "really bad," and that his thoughts were racing and telling him he had to do it. Defendant understood that it was not okay to stab people, but was having commanding thoughts telling him that he had to do it or he was going to "get me." Defendant explained: "He was -- he was having people

5

come -- come hurt me, too.  They beat me up in my garage one time really bad.  Two people."

Defendant initially denied, then admitted, that he had exposed himself to his "hot," "sexy" neighbor, and had masturbated in his garage with the door open.  He told the detective that he would not rape anyone and said, "If I wanted to rape somebody, I would go and do something."  Defendant admitted having spent 84 days in county jail the previous October for exposing himself to the nurse who gave him his medications.  Defendant said, "I didn't touch her, none of that stuff.  We were sitting there."

Defendant had previously used drugs, and had been caught having narcotics in prison, but swore he had been clean for 11 years since his cellmate "slammed" some crystal methamphetamine and got into a fight.  Defendant admitted that he exposed himself "a couple times" in prison, which did not go over very well, and that he got into a lot of fights in prison.  Sometimes defendant hurt himself.  In prison, he cut himself in the shower with a razor.  Defendant said his medication does not always work; even when he takes everything.  He said he tried to be stable but someone always pushed his buttons.  While in prison he was moved around a lot because of his behavior.

## DISCUSSION

### I.  Motion to dismiss five-year enhancement

Prior to sentencing, defendant filed a motion to dismiss one or both of the two prior robbery convictions alleged as strikes under the Three Strikes law, as well as the five-year recidivist enhancements (§ 667, subd. (a)(1)) imposed due to the robbery convictions.  As defendant acknowledges "a court's failure to

6

dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).) Defendant notes, however, that "'[a] trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand. [Citations.]'" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85.) Defendant contends that the trial court abused its discretion by using the wrong legal standard in making its decision here.

Section 1385, subdivision (a), which gives the trial court the power to dismiss an action in furtherance of justice, has been construed to permit the court to strike a prior conviction alleged under the Three Strikes law. (*Romero, supra*, 13 Cal.4th at p. 504.) Section 1385, subdivision (b) gives the trial court power to "strike or dismiss an enhancement [or] strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a)." Defendant contends that the trial court erroneously used the same standard for exercising discretion to dismiss a strike pursuant to *Romero, supra*, 13 Cal.4th 497.

The trial court expressly applied the factors found in *People v. Williams* (1998) 17 Cal.4th 148, 160-161 (*Williams*), such as the nature and circumstances of the defendant's present felony and prior serious or violent felony convictions, as well as his background, character, and prospects, to determine whether he may be deemed outside the spirit of the Three Strikes law, in whole or in part. Defendant argues however, that the trial court then *summarily* denied defendant's motion to strike the recidivist enhancements, by stating, "The Court recognizes it does have the discretion to strike those, and I am going to decline to do so."

7

Defendant appears to argue that because the court did not mention a different standard for striking the recidivist enhancements, the court denied the motion on the ground that the defendant was not outside the spirit of the Three Strikes law. We disagree.

The trial court did not summarily deny the motion to strike the five-year priors. California Rules of Court, rule 4.428(b) provides that in exercising its discretion under section 1385, the trial court may consider "the accurate reflection of the defendant's criminal conduct on his or her record, the effect it may have on the award of custody credits, and *any other relevant consideration*." (Italics added.) "Relevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise." (Cal. Rules of Court, rule 4.409.)

The record affirmatively reflects that the court considered relevant factors set out in California Rules of Court, rule 4.410, which lists the general objectives of sentencing, and California Rules of Court, rules 4.421 and 4.423, including circumstances in aggravation and mitigation. The rules apply to sentencing in general, and to exercising discretion -- whether to strike enhancements or punishment for enhancements. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117.) California Rules of Court, rule 4.421 lists circumstances in aggravation, including, as relevant here, the infliction of great bodily injury, the use of a weapon, defendant's prior violent conduct that indicates a serious danger to society, defendant's prior prison terms, and the fact that defendant was on parole. Rule 4.423 lists circumstances in mitigation, including, as relevant here, defendant's mental

condition, whether it significantly reduced his culpability for the crime, and whether defendant voluntarily acknowledged wrongdoing at an early stage of the criminal process.

It is clear the court considered the relevant factors and circumstances here, although the court did not name which particular rule applied to which particular facts. The court also heard statements from family members about defendant's mental illness and their love for him. Defendant's motion included attachments of his medical reports, which detailed defendant's severe mental illness, treatments, and hospitalization. The court observed:

> "I acknowledge the fact that [defendant] is mentally ill. Clearly. Clearly, he is. But I also think that the family has to recognize equally as much that he is a violent person as well. [¶] I saw his father testify during the course of the trial and I saw the pictures. And [defendant] stabbed his father in the chest several times. [Defendant's father] is actually very lucky to be alive today. Had the knife been plunged into his chest in a different angle, at a different angle or in a different spot, it could have easily just killed him instantly. He could have bled to death [and] had to have emergency surgery. A surgeon had to split his chest open from the bottom of his throat down to his belly button in order to save his life. [¶] So, you know, I recognize [defendant] has serious mental health issues. But I also recognize that he has a propensity to be pretty violent."

The trial court also discussed defendant's recorded statement to the police:

> "[I]n the statement itself, it's clear that [defendant] knew what he was doing. Although . . . he did mention snakes. . . . he knew that he was stabbing his father in the chest. . . . [H]e said that to the police. He knew it. He wanted to injure his father. [¶] So, you know, you have to consider all of that when you are thinking about his mental health issues too."

The trial court also considered defendant's criminal history, stating, "And then you look at his prior conviction where he was convicted of several robberies with the use of a firearm and he discharged the firearm during the course of the robbery [and] did 19 years in state prison . . . ." The court noted that defendant "re-offended . . . within one year. [H]e stabbed his father in the chest. [¶] [T]here was another arrest for indecent exposure and . . . another incident where [defendant] allegedly exposed himself to a neighbor. Knocked on [her] door and tried to get in there to have sex with her." Although the court did not expressly state that the aggravating factors outweigh the mitigating factors, it is clear from the court's reasoning and ruling that this was the court's conclusion.

Defendant cites legislative history materials for Senate Bill 1393, which amended section 1385 to permit the trial court to dismiss the five-year recidivist enhancement, indicating that in exercising its discretion, the court should consider "the 'facts of the case, the defendant's history and culpability or other potential mitigating factors.' (Sen Comm. on Pub. Safety,

10

SB 1393 (2017-2018 Reg. Sess.)" Defendant argues that "other potential mitigating factors" means that the list of factors the trial court may consider is meant to be "more expansive than the typical *Romero/Williams* factors" to be used in determining whether to strike a prior conviction alleged under the Three Strikes law. Defendant suggests that the trial court should therefore have considered less "traditional" mitigating circumstances such as sympathy and compassion. Defendant asserts that his sentence must be reversed because the trial court was unaware of its discretion to consider sympathy and compassion to strike an enhancement in furtherance of justice. In fact, the trial court expressed sympathy and compassion for defendant due to his mental illness, and indicated that if the law allowed, the court would not send defendant to prison but to a live-in lock-down mental health facility.

Defendant appears to gather from the trial court's expressions of sympathy, that it had no power to strike the enhancement under the circumstances of this case. We do not share defendant's interpretation of the court's remarks.[4] The trial court's remarks were an expression of the court's wish that the Department of Corrections had more extensive psychiatric facilities or services, and that the court had the opportunity to place defendant in such a facility. A trial court may *recommend* placement, but placement and transfer decisions, including mental health placements are within the authority of the Department of Corrections and Rehabilitation. (Cal. Code Regs.,

---

[4] Expressions of sympathy are "often seized upon by defendants in making the argument" that the court wanted to grant leniency but felt powerless to do so. (See *People v. Sassounian* (1986) 182 Cal.App.3d 361, 414-416.)

11

tit. 15, § 3375; see *People v. Lara* (1984) 155 Cal.App.3d 570, 576; § 5080.)  The court intended to make the appropriate recommendation, saying it would "reach out to a contact. . . . to see if there's somewhere in the state prison system where [the court] can recommend that [defendant] be sent so he does receive mental health treatment."

The court carefully considered the circumstances in aggravation and mitigation, and implicitly found that the circumstances in aggravation weighed more heavily against granting the motion.  The trial court did not abuse its discretion or use an improper evaluation.

## II. *Romero* motion

Defendant notes that the trial court recognized that defendant has genuine mental health issues, and that in denying the *Romero* motion, the court said, "So my compassionate and sympathetic side wants me to strike a strike.  But when I follow the law, I simply cannot reach that conclusion because he is not outside the letter and the spirit of the Three Strikes law." Defendant contends that this is error.  He argues that the spirit of the Three Strikes law has changed so dramatically since the California Supreme Court's 1986 decision in *Romero*, *supra*, 13 Cal.4th 497, and since the 1998 decision in *Williams, supra,* 17 Cal.4th 148, that they represent an outdated standard.

Defendant acknowledges that granting a *Romero* motion "required an 'extraordinary' showing that the 'career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record.'" (*Carmony*, *supra*, 33 Cal.4th at

12

p. 378, quoting *Williams, supra,* 17 Cal.4th at p. 161.)  But he asserts that that was an old standard.

The *Romero/Williams/Carmony* standard is not outdated or obsolete.  The California Supreme Court has continued to require that "'the circumstances must be "extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls . . ." [and] the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary.' [Citation.]" (*People v. Vargas* (2014) 59 Cal.4th 635, 641, quoting *Carmony, supra,* 33 Cal.4th at p. 378.)

Defendant further argues that the Three Strikes law was dramatically altered by the Three Strikes Reform Act of 2012, enacted by Proposition 36.  The Three Strikes Reform Act did not change the standard or even apply to defendant; rather it modified the Three Strikes law so that the minimum 25-year-to-life sentence may be imposed (usually) only if the third conviction is also a serious or violent felony. (*People v. Johnson* (2015) 61 Cal.4th 674, 679-681.)  The Three Strikes law continues to limit a sentencing court's discretion to strike a prior serious or violent felony conviction.  (See *Carmony*, *supra*, 33 Cal.4th at pp. 377-378.)

Defendant asserts that he is constitutionally entitled to have the sentencing court consider sympathy and compassion. He relies on *People v. Lanphear* (1984) 36 Cal.3d 163, which held that a jury considering the *death penalty* must be permitted to consider and "act on the basis of sympathy or compassion when that sympathy is a reaction to evidence regarding the defendant's character or background.  That evidence, as distinguished from

13

mitigating circumstances related to the offense itself, may not reduce culpability, but it must nonetheless be considered by the jury. [Citation.]" (*Id.* at pp. 166-167, citing *Eddings v. Oklahoma* (1982) 455 U.S. 104, 113-115; *Lockett v. Ohio* (1978) 438 U.S. 586, 604; *Woodson v. North Carolina* (1976) 428 U.S. 280, 304; *Williams v. New York* (1949) 337 U.S. 241, 247.) Defendant's sentence was determined by the court, which did consider defendant's background, character, and prospects, and "'other "*individualized considerations*."'" (*Williams, supra*, 17 Cal.4th at p. 159, italics added.) As we have previously discussed, we do not construe any of the trial court's comments as expressing the belief that it was prohibited from considering sympathy or compassion, only that it had to follow the law.

Defendant appears to argue that the language in section 1385 giving the court authority to dismiss an action or enhancement "in furtherance of justice" is intended to confer such broad discretion as to allow the court to give as great or more weight to sympathy and compassion in ruling on a *Romero* motion than the factors outlined in *Williams, supra*, 17 Cal.4th at p. 161, including the nature and circumstances of the current felony and prior serious or violent felony convictions, defendant's background, character, and prospects. On the contrary, although section 1385, endows the trial court with broad discretion, "'[t]he requirement of the statute that a "dismissal" in the "furtherance of justice" be accompanied by a specification of reasons, acts as a *restraint* on the exercise of that discretion and contemplates that the exercise of such discretion be reviewable by a higher court. [Citations.] [¶] Any dismissal purporting to be in the "furtherance of justice" must necessarily be based on a consideration, not only of defendant's interest, but of the interest

14

of society in seeing that its laws are effectively implemented. [Citation.]'" (*People v. Sassounian, supra*, 182 Cal.App.3d 361, 415, italics added, quoting *People v. Orin* (1975) 13 Cal.3d 937, 944-947.) "[T]he unwillingness of a trial judge to face that difficult task or the sympathy which the trial judge might feel for a particular defendant cannot . . . constitute a basis for a complete or partial dismissal 'in furtherance of justice' under Penal Code section 1385." (*People v. Sanders* (1983) 145 Cal.App.3d 218, 225-226; accord, *Sassounian, supra*, at p. 414.)

Here, the trial court did, in fact, undertake the task of balancing the interests of society with sympathy for defendant and his family. After hearing from family members, the court said:

> "I understand the love that the family has for [defendant]. And I respect that. But sometimes there's an old saying, love is blind. When you love somebody, you don't see the negatives. You don't see the problems. In this case, I acknowledge the fact that [defendant] is mentally ill. Clearly. Clearly, he is. But I also think that the family has to recognize equally as much that he is a violent person as well."

The court then noted that Khachik could have died, and that it was clear from defendant's statement to the police that he knew what he was doing and wanted to injure his father. The court then described defendant's two prior armed robberies, violent felonies pursuant to section 667.5, subdivision (c)(9), and noted that defendant discharged a firearm during the course of one robbery, spent 19 years in prison, and violently reoffended within one year.

15

We conclude from the totality of the trial court's comments that the court understood the scope of its discretion and applied the correct legal standard to determine that defendant is not outside the spirit of the Three Strikes Law. Thus, the court's ruling did not "'fall[] outside the bounds of reason' under the applicable law and the relevant facts [citations]." (*Williams*, *supra*, 17 Cal.4th at p. 162; *Romero*, *supra*, 13 Cal.4th at p. 530.) Defendant has failed to meet his burden to demonstrate that the trial court's decision was irrational or arbitrary. (*Carmony*, *supra*, 33 Cal.4th at pp. 377-378.)

## III. Imposition of two five-year enhancements

Defendant contends that one of the two five-year enhancements imposed should be stricken because the prior convictions on which they were based were not brought and tried separately. Respondent agrees.

In relevant part, section 667, subdivision (a)(1) provides that "[a]ny person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately." (§ 667, subd. (a)(1).) "[T]he requirement in section 667 that the predicate charges must have been 'brought and tried separately' demands that the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris* (1989) 49 Cal.3d 131, 136.)

In this case it was alleged that the two robbery convictions arose from the 1998 conviction in Los Angeles Superior Court case No. GA036919. Defendant admitted both robbery

convictions, and that they were entered on the same date in the same case, No. GA036919. Since the two convictions were not separate, the trial court should have imposed the enhancement for just one of them.

The appropriate remedy is for this court to vacate one of the five-year enhancements. (See *People v. Jones* (2015) 236 Cal.App.4th 1411, 1417-1418; *People v. Frausto* (2009) 180 Cal.App.4th 890, 903-904.)

## DISPOSITION

The judgment is modified by vacating one of the two five-year enhancements imposed under section 667, subdivision (a). As so modified, the judgment is affirmed. The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation a certified copy of an amended abstract of judgment reflecting the amended judgment.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:

_____, P. J.
LUI


_____, J.
ASHMANN-GERST


17