Filed 9/19/14  P. v. Williams CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>O'NEILL WILLIAMS,<br><br>        Defendant and Appellant. | A137072<br><br>(Contra Costa County<br>Super. Ct. No. 05-120827-1) |

O'Neill Williams repeatedly harassed his wife, S.B., after she obtained a restraining order against him.  A jury convicted him of one count of stalking in violation of a restraining order, and he was sentenced to five years in prison.  His sole contention on appeal is that the trial court erred by permitting S.B. to testify that, based on "past experience," she believed his threats to rape her.  We are not persuaded and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Williams and S.B. married in December 2009 after living together for about four years.  Six months later, S.B. obtained a restraining order against Williams that required him to stay at least 100 yards away from her and her home and workplace, and a few months after that they were legally separated.  They briefly attempted to reconcile a few months later, and S.B. requested that the restraining order be lifted.  She soon rescinded the request, however, and they moved apart.

1

In May 2012, an information was filed charging Williams with felony counts of stalking in violation of a restraining order, making criminal threats, and inflicting corporal injury on a spouse resulting in a traumatic condition, and a misdemeanor count of disobeying a protective court order resulting in physical injury.[1]  The information also alleged various sentence enhancements based on prior convictions.[2]

Before S.B. testified at trial, the trial court held a hearing under Evidence Code section 402 to receive testimony from her about various matters, including evidence the prosecution sought to introduce under Evidence Code sections 1101, subdivision (b) and 1109.[3]  S.B. testified that in March 2007, Williams held her down, slapped her face repeatedly, and raped her twice.  She then had sex with him on the next ten nights out of fear that he would hit her again.  As a result of these incidents, charges were filed against Williams, but they were ultimately dismissed.

The trial court tentatively ruled that it would not admit evidence of the March 2007 rapes.  It observed that it had "to exercise [section] 352 discretion," and it determined that admitting the evidence would be "too time[-]consuming" because the previous charges had been dismissed, proving the incidents could require several witnesses, and Williams might be "forced to defend himself in a mini[-]trial."

---

[1] The felony counts were brought under Penal Code sections 646.9, subdivision (b) (stalking), 422 (making criminal threats), and 273.5, subdivision (a) (inflicting corporal injury).  The misdemeanor count was brought under Penal Code section 273.6, subdivision (b).  Williams was also charged with second degree robbery under Penal Code section 211, but that charge was dismissed before trial.

[2] The information alleged two prior strikes under Penal Code sections 667 and 1170.12 based on 1978 felony convictions for assault with a deadly weapon under Penal Code section 245 and kidnapping by force under Penal Code section 207.  These allegations, as well as an allegation that the 1978 convictions resulted in a prior prison term under Penal Code section 667.5, subdivision (b), were later stricken on the prosecution's motion.  The information also alleged that a 2004 felony conviction for receiving stolen property under Penal Code section 496, subdivision (a) resulted in a prior prison term under Penal Code section 667.5, subdivision (b) and that the 1978 convictions, the 2004 conviction, and a 1986 conviction for procurement under Penal Code section 266 made Williams ineligible for probation under Penal Code section 1203, subdivision (e)(4).

[3] All further statutory references are to the Evidence Code unless otherwise noted.

The trial court later made a final ruling that evidence of the rapes could not be introduced under sections 1101 and 1109.  When the prosecutor said, "So there would be no mention of that 2007 incident," the court responded, "Unless brought up sideways.  I don't know.  I'm just saying that your desire to prove it [under sections] 1101 [and] 1109 while you're still presenting your case, I'm saying for that reason I will deny that."

At trial, S.B. testified about Williams's behavior toward her from May 2010 through October 2011.  Williams was physically violent toward her, including slapping her face, choking her, punching her in the head, and shoving her.  He threatened "to stomp [her] into the ground," "destroy" her, beat her even if it meant he would go to jail, and harm her family.  He accused her of prostitution and routinely insulted her in extremely offensive terms.  Throughout this period, he harassed her at her home, outside her workplace, at her church, at her credit union, and even outside court immediately after she obtained the restraining order.  He also left numerous voicemail messages in which he threatened and insulted her.

When the prosecutor questioned S.B. about the voicemail messages, she testified that Williams had left a message in which he threatened to rape her and that she believed this threat.  When the prosecutor asked her why she "believe[d] that . . . [Williams] was capable [of] . . . carry[ing] out that threat," she responded, "Past experience."

Outside the jury's presence, Williams's trial counsel objected that S.B.'s testimony was "incredibly prejudicial" because it referred to the March 2007 rapes.  The trial court ruled, "There was no reference in her answer to things that I excluded.  It establishes she's known the gentleman for [a] while . . . .  Therefore, I don't think she's put anything prejudicial out there.  And the fact, as I say, shows she was with the gentleman for a while and allows her, I think, to give her answer [in] that general way without harm to the case, as far as I'm concerned."

The jury found Williams guilty of stalking and not guilty of making criminal threats.  It hung on the count of inflicting corporal injury on a spouse, and the trial court dismissed the charge at the prosecution's request.  The jury also returned a verdict form purporting to find Williams guilty of the charge of disobeying a protective court order

3

resulting in physical injury, but it failed to make a required separate finding of physical injury. The error was not discovered until after the jury had been discharged, and the court found that the "verdict [was a] nullity and treated it as if there [was] no verdict at all" on that count.

The trial court denied probation and sentenced Williams to five years in state prison, comprised of the upper term of four years and a term of one year for a sentence enhancement based on a prior conviction with a prison term.

## II.
### DISCUSSION

Williams argues that the admission of S.B.'s testimony that she believed his threat to rape her based on "past experience" violated section 1101, subdivision (a). We disagree.

In general, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) This rule has two limitations relevant here. First, "evidence that a person committed a crime, civil wrong, or other act" is admissible "when relevant to prove some fact . . . other than his or her disposition to commit such an act" (§ 1101, subd. (b)), as long as it is also admissible under section 352, which allows a trial court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Second, with exceptions not relevant here, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [s]ection 1101 if the evidence is not inadmissible pursuant to [s]ection 352." (§ 1109, subd. (a)(1).)

Evidentiary rulings are reviewed for an abuse of discretion. (*People v. Rowland* (1992) 4 Cal.4th 238, 264.) Under this standard, we will not disturb the trial court's admission of S.B.'s testimony unless the ruling " 'falls outside the bounds of reason'

4

under the applicable law and the relevant facts." (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

We disagree with the basic premise of Williams's argument, that S.B.'s testimony was tantamount to "evidence of a past rape allegedly perpetrated by . . . Williams against [S.B.]" Although that is one way to interpret her testimony, it is not the only one. For example, she could have been referring to her past experience that Williams followed through on what he threatened to do or that he was willing to use violence to get what he wanted. The trial court did not abuse its discretion when it determined that her testimony did not amount to evidence of the March 2007 rapes it had previously ruled inadmissible.

Even if we were to accept that S.B. unmistakably testified that Williams had raped her, we would conclude the trial court did not err by allowing the testimony. Williams claims that the court had previously found evidence of the rapes inadmissible under sections 1101, subdivision (b) and 1109, so that "when the evidence was ultimately adduced in front of the jury, it was presented as plain and simple bad character evidence" that was inadmissible under section 1101, subdivision (a). He is incorrect. The court's original ruling was based on the finding that the evidence was unduly prejudicial under section 352, not on any finding that section 1101, subdivision (b) or section 1109 was inapplicable. In fact, S.B.'s testimony was admissible under both sections.

First, S.B.'s testimony was admissible under section 1101, subdivision (b) to prove a fact other than Williams's propensity to commit rape. One of the elements of the stalking charge required the prosecution to prove that Williams made "a credible threat."[4] (Pen. Code, § 646.9, subd. (a); *People v. Uecker* (2009) 172 Cal.App.4th 583, 594.) The focus in assessing whether a threat is credible is on whether the victim reasonably feared

---

[4] "Credible threat" is defined as "a verbal or written threat, including that performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family." (Pen. Code, § 646.9, subd. (a).)

for his or her safety, and "[i]t is not necessary to prove that the defendant had the intent to actually carry out the threat." (Pen. Code, § 646.9, subd. (g); *Uecker*, at pp. 594-596.) Evidence of S.B.'s past experience with Williams was relevant to prove whether she reasonably believed his threat—a fact other than his disposition to commit rape—and was therefore admissible under section 1101, subdivision (b). (See *People v. Minifie* (1996) 13 Cal.4th 1055, 1065, 1067 [evidence of past threats against defendant by victim's associates admissible under section 1101, subdivision (b) because relevant to prove defendant reasonably feared for his life and acted in self-defense].)

Second, S.B.'s testimony was admissible under section 1109 because it was evidence of a prior act of "domestic violence" and Williams was charged with "an offense involving domestic violence." (§ 1109, subd. (a)(1).) Under section 1109, " '[d]omestic violence' has the meaning set forth in [s]ection 13700 of the Penal Code" and, if the prior act is within five years of the charged offenses, as is the case here, "the further meaning . . . set forth in [s]ection 6211 of the Family Code." (§ 1109, subd. (d)(3).) The prior rapes described by S.B. were acts of "domestic violence" under Penal Code section 13700.[5] (See *People v. Poplar* (1999) 70 Cal.App.4th 1129, 1139 [rape is "offense involving domestic violence" under section 1109].) And stalking is "an offense involving domestic violence" under section 1109 based on the definition of "domestic violence" in Family Code section 6211.[6] (*People v. Ogle* (2010) 185 Cal.App.4th 1138, 1143-1144.)

Williams also claims that S.B.'s testimony should have been excluded because the trial court had previously ruled that evidence about the rapes would be "extremely

---

[5] " 'Domestic violence' " is defined to include "abuse committed against an adult . . . who is a spouse" (Pen. Code, § 13700, subd. (b)), and " 'abuse' " is defined as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (Pen., Code, § 13700, subd. (a).)

[6] Family Code section 6211 defines " '[d]omestic violence' " to include "abuse perpetrated against" a spouse. " 'Abuse' " includes "engag[ing] in any behavior that has been or could be enjoined pursuant to [s]ection 6320" (§ 6203, subd. (d)), which in turn includes "stalking." (Fam. Code, § 6320, subd. (a).)

prejudicial" to him under section 352. The court's earlier ruling was based on its determination that proving the prior acts would take too much time and might force Williams to take the stand. But the court expressly found that the specific testimony at issue, which did not give any details about the rapes, was *not* prejudicial. As a result, Williams cannot rest on the court's previous ruling that evidence of the rapes generally would be prejudicial. He fails to offer any independent reason that S.B.'s testimony was inadmissible under section 352, and we perceive none. We conclude that the court did not abuse its discretion by allowing that testimony.

## III.
### DISPOSITION

The judgment is affirmed.

_____
Humes, P.J.

We concur:

_____
Margulies, J.

_____
Dondero, J.

7