Filed 9/16/16  P. v. Neufeld CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROGER HENRY NEUFELD,<br><br>        Defendant and Appellant. | B265952<br><br>(Los Angeles County<br>Super. Ct. No. MA065160) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

Jenny M. Brandt, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Noah P. Hill and Abtin Amir, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found Roger Henry Neufeld (Neufeld) guilty of second degree robbery in violation of Penal Code section 211.[1]  In a bifurcated proceeding, the trial court found that Neufeld suffered two prior serious and/or violent felonies pursuant to section 667, subdivision (d) and suffered a prior serious felony pursuant to section 667, subdivision (a)(1).  Pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), the trial court dismissed one of Neufeld's prior "strikes"—the court dismissed the juvenile conviction for robbery, but not the adult conviction for voluntary manslaughter.  The court sentenced Neufeld to 11 years in state prison.

On appeal, Neufeld advances three arguments.  First, he contends that there was insufficient evidence to prove that the robbery was accomplished through force or fear.  Second, Neufeld argues that his conviction must be overturned because the prosecutor engaged in prejudicial misconduct during closing argument.  Third, Neufeld claims that the trial court abused its discretion by failing to strike both of his prior convictions.  We disagree with all three contentions and, accordingly, affirm the judgment.

## BACKGROUND

### I.      The robbery

On January 19, 2015, Neufeld entered a 7-Eleven store in Lancaster, California.  When Neufeld entered the store, Rajpal Kahlon (Kahlon) was one of the sales associates on duty.  From behind the cash register counter, Kahlon observed Neufeld walk from one corner of the store to the other.  Eventually, Neufeld walked down the candy aisle, which is perpendicular and directly in front of the cash register.  The candy aisle is the "most obvious aisle" from the cash register counter and on the day in question, Kahlon had a "very clear" view of Neufeld as he walked up the candy aisle toward the cash register.  As Kahlon watched, Neufeld walked up the candy aisle and grabbed a "Butterfinger" candy bar.  After grabbing the candy bar, Neufeld walked to the end of the aisle and turned toward the store's door.  At first, Kahlon thought Neufeld had simply forgotten to pay, as other customers sometimes do when they are distracted or are in a hurry.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Accordingly, Kahlon said, "[E]xcuse me" to Neufeld and reminded him to pay for the candy bar. Instead of answering or even acknowledging Kahlon, Neufeld ignored him and walked out of the store. Not only did Neufeld ignore Kahlon, but he walked "faster than normal." Kahlon then walked around the counter to the door, opened it, and called out to Neufeld, who was roughly 40 to 60 feet away, by saying, "[E]xcuse me. Come back."

When Kahlon called out to Neufeld from the door, Neufeld responded. Neufeld walked back toward the store and when Kahlon told him that Neufeld needed to pay for the candy bar which was still in his hand, Neufeld got "upset." Neufeld told Kahlon that he purchased the candy bar at another store. Then Neufeld raised up both of his hands with clenched fists, between chest and shoulder height, saying, "[C]ome on, come on." By his words and his actions, Kahlon believed that Neufeld wanted to fight him. At one point during the confrontation between Neufeld and Kahlon another customer, a regular customer of the store named Mark, offered to pay for the candy bar and encouraged Kahlon to "disengage" from Neufeld.

In response to Neufeld's words and actions, Kahlon went back inside the store and called the police. As Kahlon walked back into the store, he also looked over his shoulder because he feared that Neufeld might "come from the back and attack" him. As Kahlon walked away, Neufeld violently shoved or "slammed" the store's door and began "cussing and yelling." At the time of the incident, Kahlon was not very scared, "[b]ut [he] was scared." Due to Neufeld's anger, Kahlon was scared for himself and for others and, as a result, he called the police: "I thought maybe he gonna start fighting with me or with the customer maybe, because he was already upset. So it's company policy to just call law enforcement if something goes a little bit the way it was."

Not long after Kahlon called the sheriff's department directly (not 911) the police took Neufeld into custody.

## II.     Trial and sentencing

The principal evidence offered by the prosecution at trial was the testimony of Kahlon and the surveillance video from the store's various cameras. Neufeld did not

3

offer any witnesses. Instead, the defense argued that while a theft occurred, a robbery did not.[2] The defense argued that a robbery did not occur because there was no force and little fear: "No weapon, no hitting, no shoving, no wrestling, no pushing, . . . no scared customers, no locking of the business doors, no call to 911, no robbery."

On June 18, 2015, after less than three hours of deliberations, the jury found Neufeld guilty of robbery.

Pursuant to *Romero*, *supra*, 13 Cal.4th 497, Neufeld asked the court to strike his two prior felony convictions—a juvenile conviction for robbery and an adult conviction for manslaughter—on the grounds that those crimes occurred a long time ago during a period in his life when he suffered from "immaturity and irresponsibility" and that since that time he has turned his life around, becoming a husband, father, valued employee and, for the most part, a law abiding citizen—the only two convictions since being released from prison for manslaughter were for driving under the influence in 2009 and 2012. Neufeld asked the court to either put him on probation or, in the alternative, strike one of his prior convictions and sentence him to the low term, for a total prison term of nine years.

Although the trial court was "not comfortable" in giving Neufeld a long prison sentence "over a Butterfinger bar," it was nonetheless troubled by Neufeld's "pattern of making terrible choices." With regard to the relatively recent driving under the influence convictions, the court noted that while those crimes are misdemeanors they are very serious misdemeanors and agreed with the prosecutor that "that type of conduct is very dangerous to society." Moreover, Neufeld committed the instant robbery while on probation for the driving under the influence convictions. While the court was sympathetic to the "addiction issues" that led to Neufeld's prior felony convictions, and was willing to dismiss the juvenile robbery conviction, the court was not willing to dismiss the adult conviction for manslaughter. In reaching its decision, the court was

---

[2] The court instructed the jury on robbery and, inter alia, the lesser included offense of theft.

4

troubled by Neufeld's willingness to engage in behavior that risked violence and injury over something as insignificant as a candy bar. Specifically, the court noted that had Neufeld simply kept walking away from the 7-Eleven store, the crime would have been "a misdemeanor petty theft." Instead of walking away, however, Neufeld elected to return and "confront" Kahlon.

On July 30, 2015, the court sentenced Neufeld to 11 years in state prison—the midterm of three years, doubled to six years pursuant to sections 1170.12 and 667, plus an additional five consecutive years for his prior adult conviction pursuant to section 667, subdivision (a)(1). Neufeld timely appealed.

## DISCUSSION

### I.      Substantial evidence supports the robbery conviction

Neufeld maintains that the People failed to meet its burden of proof: "There was not substantial evidence that the minimal fear experienced by Mr. Kahlon contributed to Mr. Neufeld's ability to leave the store with the candy." According to Neufeld, "[t]he record shows only that a theft occurred, that a clerk was minimally afraid, and that this clerk, in his own words did not part with the candy because he was afraid," but did so because he "did not want to violate store policy." As discussed below, we disagree.

#### A.      *Standard of review*

"'The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt.'" (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) We "view the evidence in the light most favorable" to the verdict, and presume the existence of every fact the jury might reasonably deduce from it. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We do not "substitute our evaluation of a witness's credibility for that of the fact finder." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "[T]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*People v. Leigh* (1985) 168 Cal.App.3d 217, 221.)

5

*B.      Neufeld accomplished the robbery by fear*

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)

"The element of force or fear is satisfied if the force *or* fear caused the victim to give up his or her property." (*People v. Smith* (1995) 33 Cal.App.4th 1586, 1595, italics added.) The force or fear element of robbery is stated in the disjunctive. "It is not necessary that the robbery be accomplished by means of both force and fear." (*People v. Winters* (1958) 163 Cal.App.2d 619, 623; *People v. Centers* (1999) 73 Cal.App.4th 84, 99.) Use of fear or intimidation without force to induce the victim to part with property may constitute robbery. (*People v. Brew* (1991) 2 Cal.App.4th 99, 104; *Winters*, at p. 623.) "Force is not a necessary element of the offense of robbery because the offense may be committed by fear alone." (*People v. Tuggle* (1991) 232 Cal.App.3d 147, 155; see *People v. Reeves* (2001) 91 Cal.App.4th 14, 52; *People v. Brown* (1989) 212 Cal.App.3d 1409, 1418, disapproved on another ground in *People v. Hayes* (1990) 52 Cal.3d 577, 628, fn. 10.) Although the taking must be accomplished by force or fear, the defendant need not have intended the victim to experience force or fear—only to deprive the victim of the property permanently. (*People v. Anderson* (2011) 51 Cal.4th 989, 995–996.)

To establish the element of fear, the victim need not testify that he or she was afraid. (See *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709, fn. 2.) There need only be evidence from which it can be inferred that the victim felt fear and that the fear allowed the crime to be accomplished. (*Ibid*.) "[T]he fear necessary for robbery is subjective in nature, requiring proof 'that the victim was in fact afraid, and that such fear allowed the crime to be accomplished.'" (*People v. Anderson* (2007) 152 Cal.App.4th 919, 946.) The element of fear need not arise from an express threat; intimidation of the victim is enough. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774–775.) Fear may be generated by words, actions, or the surrounding circumstances, and it may arise after the taking. (*People v. Flynn* (2000) 77 Cal.App.4th 766, 771–772.) And while the

6

victim must actually become afraid, the fear need not be extreme: it need only be enough to cause the victim to comply with the demand for the property. (*People v. Cuevas* (2001) 89 Cal.App.4th 689, 698; *Morehead*, at pp. 774–775.) The fear element is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for his or her property. (*People v. Davison* (1995) 32 Cal.App.4th 206, 212; *People v. Smith*, *supra*, 33 Cal.App.4th at p. 1595; *Morehead*, at p. 775.) In short, the prosecutor must show that the defendant used fear, and the victim was compelled by fear.

Here, the People showed that Neufeld used fear and intimidation to carry away the candy bar. He threatened Kahlon with his actions and his words—he raised both of his hands with clenched fists, saying, "[C]ome on, come on," and, when Kahlon turned away from the taunts and raised fists, Neufeld violently shoved or "slammed" the store's door and began "cussing and yelling." The People also showed that Khalon was afraid. Kahlon repeatedly testified that while he was not very scared he was, in fact, scared, scared for himself and others.

Neufeld argues that Kahlon only experienced the "lowest level of fear," one on a scale of one to 10. However, the amount of fear is beside the point. What matters is not whether the victim experienced a high level of fear or a low level; the issue is simply whether the victim was afraid and whether that fear aided the defendant in accomplishing the crime. Here, as noted above, Kahlon was afraid. And, because he was afraid, Kahlon elected to disengage from Neufeld, thereby allowing Neufeld to remain in possession of the candy bar.

Neufeld agues next that while Kahlon may have been afraid, there is no express testimony by Kahlon that his fear made him "'afraid to resist the taking.'" (Italics omitted.) According to Neufeld, the evidence showed that he was "able to carry the candy away only because . . . Kahlon did not want to violate store policy," not because Kahlon was afraid. Neufeld's argument is based on the following testimony by Kahlon during his direct examination—The prosecutor asked Mr. Kahlon, "Did the defendant do anything, either physically or verbally, that gave you cause for concern, or if you had tried to get the candy back?" Kahlon answered, "No." Kahlon went on to explained that

"[i]t's not 7-Eleven's policy to go and grab the candy from the customer; just to call law enforcement, so I did." Neufeld asserts that "Kahlon's . . . testimony that . . . Neufeld did not do anything that gave him 'cause for concern' in retrieving the candy bar negated the element of robbery requiring proof that theft was accomplished by force or fear."

Neufeld attempts to bolster his legal argument by relying on *People v. Welsh* (1936) 7 Cal.2d 209. In that case, the defendant and another male seized the victim, threw her into their vehicle, placed her between them, and drove off. She had her hand on her purse, which held some cigarettes, money, and other items. The defendant took her purse, removed the cigarettes and returned it to her lap. The Supreme Court affirmed the defendant's conviction of attempted rape, but reversed a robbery conviction because the record was "void of any showing that any force was used in taking the cigarettes or that the complaining witness was afraid to resist the taking of them" and there was no other act indicating an intention "to rob the complaining witness of anything except her virtue." (*Id*. at p. 212.)

Here, in contrast, there was no evidentiary void about specific acts of intimidation in connection with a robbery, the fear generated by those acts, or the effects of the fear on the victim. The record shows that Neufeld threatened force in order to carry off the candy bar by both words and deeds and that the threat of force caused Kahlon to experience fear and to change his conduct. The evidence is clear that Kahlon initially resisted the taking—he called out to Neufeld as he was about to leave the store without paying for the candy bar; he then called again to Neufeld from the door of the store, asking him to come back and pay for the candy bar. The evidence is also clear that Kahlon stopped resisting the theft after Neufeld engaged in threatening conduct. From these facts the jury could reasonably infer that Kahlon called the police because of the company policy *and* because he was afraid for himself and others if he continued to resist the taking of the candy bar. Following company policy and acting out of fear are not, as Neufeld seems to assume, mutually and necessarily exclusive.

In short, we hold there was substantial evidence in the form of Kahlon's testimony—which was not only internally consistent, but it was also consistent with the

8

video from the surveillance cameras[3]—to support the jury's verdict that Neufeld was guilty of more than just theft, he was guilty of robbery.

## II.    No prosecutorial misconduct

On appeal, Neufeld asserts that he is entitled to a reversal because the prosecutor committed prejudicial misconduct during closing argument by repeatedly engaging in argument that violated Neufeld's federal and state constitutional rights.  Specifically, Neufeld alleges that the prosecutor made three sets of improper comments:  comments that were based on facts extrinsic to the law and the facts of the case; comments that misstated the law; and comments that improperly asked the jurors to put themselves in the shoes of the victim.

Neufeld further contends that even though his counsel (with one exception) repeatedly failed to object to the alleged misconduct and never asked for a curative instruction he is, nonetheless, entitled to a new trial.  Neufeld argues that he is entitled to relief despite the failure to preserve fully the issue of prosecutorial misconduct for two reasons:  (1) any failure to object and/or request a cure would have been futile; and, in the alternative, (2) the failure to object and request a curative instruction was due to the ineffective assistance of counsel.

As discussed below, we are not persuaded by either argument.  As a result, we hold that with one exception—where Neufeld's counsel did object during the People's closing argument—Neufeld's claims of prosecutorial misconduct are waived.

---

[3] Neufeld argues that Kahlon's testimony was "murky, at best" about the interaction between the two of them in the parking lot with regard to when and how often Neufeld raised his hands at Kahlon.  First, as discussed above, we cannot substitute our evaluation of a witness's credibility for that of the jury, even if that testimony is purportedly inconsistent.  As evidenced by the verdict and the swiftness with which it was reached, it is clear that the jury found Kahlon to be credible.  Second, Kahlon's testimony was corroborated by the video surveillance evidence.  Although he had not seen the store's surveillance video before testifying, Kahlon's recollection of events five months after the fact closely tracked—generally and in detail— those shown on the video.

9

A.   *Preserving the issue of prosecutorial misconduct for appeal*

"""""As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant [requested] an assignment of misconduct *and* [also] requested that the jury be admonished to disregard the impropriety."""" (*People v. Ayala* (2000) 23 Cal.4th 225, 284, italics added.)

Our Supreme Court has held that, when a defendant does not object to remarks in closing argument claimed to be prosecutorial misconduct, "defendant is deemed to have waived the objection and the point cannot be raised on appeal. [Citations.]  The reason for this rule, of course, is that 'the trial court should be given an opportunity to correct the abuse and thus, if possible, prevent by suitable instructions the harmful effect upon the minds of the jury.'" (*People v. Green* (1980) 27 Cal.3d 1, 27, overruled on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 233–237.)  If an objection has not been made, "'the point is reviewable *only* if an admonition would not have cured the harm caused by the prosecutor's misconduct.'" (*People v. Earp* (1999) 20 Cal.4th 826, 858, italics added.)

Here, Neufeld chose not to address the effect a curative instruction may have had on the alleged misconduct.  Instead, he confined his argument to the issue of futility—that is, he argues that any additional objection or any request for a curative instruction would have been futile.  In the alternative, he argues that his counsel's failure to object more than once establishes that he was denied effective counsel.

B.   *No evidence that any further objections would have been futile*

As illustrated by *People v. Hill* (1998) 17 Cal.4th 800 (*Hill*), overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, footnote 13, to establish futility as an exception to the waiver rule requires compelling evidence of misconduct.  In *Hill*, defense counsel "was subjected to a constant barrage of . . . unethical conduct, including misstating the evidence, sarcastic and critical comments demeaning defense counsel, and [the] propounding [of] outright falsehoods" by the prosecutor.  (*Hill*, at p. 821.)  Moreover, almost all of the prosecutor's misconduct in *Hill* "occurred in front of

10

the jury. [The prosecutor's] continual misconduct, coupled with the trial court's failure to rein in her excesses, created a trial atmosphere so poisonous that [defense counsel] was thrust upon the horns of a dilemma. On the one hand, he could continually object to [the prosecutor's] misconduct and risk repeatedly provoking the trial court's wrath, which took the form of comments before the jury suggesting [defense counsel] was an obstructionist, delaying the trial with 'meritless' objections. These comments from the bench ran an obvious risk of prejudicing the jury towards his client. On the other hand, [defense counsel] could decline to object, thereby forcing defendant to suffer the prejudice caused by [the prosecutor's] constant misconduct." (*Ibid.*) Under such "unusual circumstances," our Supreme Court was "convinced" that any additional attempts to object would have been "futile and counterproductive" to the defendant and, as a result, "all of the asserted grounds for misconduct were preserved for appellate review." (*Id*. at pp. 821–822.)

Neufeld's futility argument is without merit because it is asserted in an almost wholly conclusory manner—that is, with the exception of a single, lone objection that was overruled, Neufeld fails to point to any instance in the record showing any conduct by the prosecutor or the trial court at any point during the trial which would show or even suggest that any further objections and/or requests for curative instructions would have been futile. Put a little differently, with the exception of the one overruled objection, Neufeld does not point to any instance where the conduct of the prosecutor or the trial court mirrored or even approached the improper conduct found in *Hill*, *supra*, 17 Cal.4th 800. Neufeld does not point to any such evidence, because there is none. We have reviewed the trial transcript and we have found nothing that would suggest additional objections and/or requests for curative instructions by Neufeld's counsel would have been "futile" as that term is used in connection with the preservation of issues for appellate review. Where there is nothing in the record indicating that a prompt objection to misconduct by the prosecutor would have been futile or that the misconduct was so extreme that it could not be cured by a prompt objection and a request for a curative

instruction, then the issue is forfeited on appeal. (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

C. *No evidence to support claim of ineffective counsel*

"A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel." (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

In order to establish a claim of ineffective assistance of counsel in a direct appeal, a "defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.' [Citations.] Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*People v. Ledesma* (2006) 39 Cal.4th 641, 745–746.)

"[T]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one" (*People v. Padilla* (1995) 11 Cal.4th 891, 942, overruled on another ground in *Hill*, *supra*, 17 Cal.4th at p. 823, fn. 1), and "a mere failure to object to evidence or argument seldom establishes counsel's incompetence." (*People v. Ghent* (1987) 43 Cal.3d 739, 772.)

Here, Neufeld's argument with respect to the purported ineffectiveness of his counsel is wholly conclusory—just *one* sentence with no supporting citations to the

12

record or to any applicable case law.  In other words, Neufeld simply assumes that the mere failure to object establishes his counsel's ineffectiveness.  As discussed above, such an assumption is patently insufficient.  Neufeld's counsel may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the prosecutor's purportedly suspect comments.  We have no sound basis to conclude otherwise.  Because Neufeld fails to establish that his counsel's conduct during the trial fell below an objective standard of reasonableness, we presume that his counsel's performance was within the wide range of professional competence and that his counsel's inactions can be explained as a matter of sound trial strategy.  Accordingly, we reject Neufeld's ineffectiveness of counsel argument.

> D.      *No misconduct with regard to the one alleged instance where an objection was made*

### 1.     PROSECUTORIAL STATEMENTS AT ISSUE

During his closing argument, the prosecutor made the following statements about the force used in the instant robbery and the notion of force generally:  "This case comes down to this.  The defendant used force in his physical gesturing, in his physical treating of the door, slamming it open.  You saw it kind of bounce and do that; in his fists up.  And it wasn't long and then in his backing in a gesture and 'come on.'  Okay; that's force.  [¶]  And that's force so he can do what?  Keep the property, keep the merchandise that he used his five fingers to receive the five finger discount with and keep the property.  And that's what that's about.  [¶]  And what it really gets down to is; is it okay for us to expect a minimal amount of violence in our relationships with fellow citizens?  [¶]  When somebody takes your property, and the property that you're responsible for as it is in this case; is it something that Mr. Kahlon should expect that there should be a minimal level of violence, even though he wasn't touched?  He's still suppose to still slough it off and ignore the fact that he was physically threatened over the candy bar?  [¶]  Because if that's where we're going with the culture and society, then we aren't going to be shocked by all the horrible things that we hear about everyday."  Neufeld's counsel objected,

13

arguing that "[i]t's misconduct to ask the jury . . . what could happen in the future." The trial court overruled the objection.[4]

According to Neufeld, the prosecutor's statement improperly "implored the jury to convict for reasons wholly extrinsic to the law and the facts of this case." "At issue in this case and in any criminal case [is] whether the prosecutor has proved the defendant's guilt beyond a reasonable doubt. What is not legitimately at issue is whether a conviction might impact social problems in that an acquittal would somehow force people to tolerate future instances of violence perpetrated by people other than Mr. Neufeld."

### 2. *LEGAL STANDARD FOR PROSECUTORIAL MISCONDUCT*

Prosecutorial misconduct requires reversal only if it results in prejudice to the defendant. (*People v. Fields* (1983) 35 Cal.3d 329, 363.) "'A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.'" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 305.) "''"Additionally, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion."''" (*People v. Ayala*, *supra*, 23 Cal.4th at p. 284.)

Generally, "''"a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.''''" (*Hill*, *supra*, 17

---

[4] Although Neufeld's counsel did not also ask for a curative instruction, the issue was still properly preserved for an appeal due to the quickness with which the trial court overruled the objection: "the absence of a request for a curative admonition does not forfeit the issue for appeal if 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.'" (*Hill*, *supra*, 17 Cal.4th at p. 820.)

Cal.4th at p. 819.) "''''A prosecutor may "vigorously argue his case and is not limited to 'Chesterfieldian politeness'" [citation], and he may "use appropriate epithets . . . .""''''" (*Ibid.*) In addition, during closing argument prosecutors "'''"may state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature."'''" (*Ibid.*) Also, "[a]lthough defendant singles out words and phrases, or at most a few sentences, to demonstrate misconduct, we must view the statements in the context of the argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522.) Accordingly, "the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." (*United States v. Young* (1985) 470 U.S. 1, 12.)

Moreover, it is the defendant's burden to show that, "'[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the [prosecutor's] complained-of comments [to the jury] in an improper or erroneous manner.'" (*People v. Centeno*, *supra*, 60 Cal.4th at p. 667.) "'In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*Ibid.*)

### 3. *STATEMENTS AT ISSUE WERE NOT IMPROPER*

When the prosecutor's statements at issue are read in context, they appear to be in response to a line of argument offered by Neufeld throughout the trial, namely that there was no robbery because no force was used. For example, during opening arguments, Neufeld's counsel stated that "Neufeld had no weapon. He never swung at Mr. Kahlon. He never attempted to swing at Mr. Kahlon. He never made physical contact with Mr. Kahlon, whatsoever. [¶] The evidence is going to show that Mr. Kahlon was not injured. He didn't fall down; nothing like that. [¶] The evidence is going to show you that Mr. Kahlon didn't lock the doors after Mr. Neufeld left. He didn't jump behind the counter or hide." During her cross-examination of Kahlon, Neufeld's attorney returned to the absence of force, asking Kahlon "[Neufeld] doesn't swing at you or hit you or anything like that?" Finally, during closing argument, Neufeld's counsel again argued that there was no "force" used because there was "[n]o weapon, no hitting, no shoving,

15

no wrestling, no pushing, no grabbing, no threatening statements, no scared customers, no locking of the business doors, no call to 911, no robbery."

In light of Neufeld's core argument about why he did not commit a robbery, the prosecutor's statements at issue, when viewed in context, can reasonably be seen as a fair comment on the evidence and the defense's arguments about the meaning and significance of that evidence. Viewed in this context, and with the instructions given, there is no reasonable likelihood that the jury construed or applied the complained-of remark in an objectionable fashion. The trial court instructed that "[s]tatements made by the attorneys during the trial are not evidence." We presume that the jury followed the instructions, not the arguments of counsel, in convicting Neufeld. (*People v. Morales* (2001) 25 Cal.4th 34, 47.)

"'[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error free, perfect trial, and . . . the Constitution does not guarantee such a trial.'" (*People v. McNally* (2015) 236 Cal.App.4th 1419, 1433.) In other words, Neufeld is "entitled to a fair trial not a perfect one." (*Ibid*.) And that is what Neufeld received here, a fair trial, one free of prosecutorial misconduct.

## III.     There was no abuse of discretion in striking only one prior conviction

Neufeld contends his sentence is "patently absurd and unjust" because his "criminal history does not suggest that he is a dangerous person who repeatedly and regularly commits violent crimes. Therefore, the ["]Three Strikes["] law is not meant for him." As discussed in more detail below, we disagree.

### A.     Standard of review

Section 1385, subdivision (a) "permit[s] a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law." (*Romero*, *supra*, 13 Cal.4th at pp. 529–530.) "A court's discretion to strike [a] prior felony conviction allegations in furtherance of justice is limited," however, and "is subject to review for abuse." (*Id*. at p. 530.) "'"'[I]n furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of*

16

*society represented by the People*, in determining whether there should be a dismissal. [Citations.]" [Citations.] At the very least, the reason for dismissal must be "that which would motivate a reasonable judge."'" (*Id.* at pp. 530–531.)

We apply the deferential abuse of discretion standard to the trial court's decision to dismiss only one of Neufeld's prior felony convictions for sentencing purposes. (*People v. Williams* (1998) 17 Cal.4th 148, 162 (*Williams*).) "Although variously phrased in various decisions [citation], [the standard] . . . asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." (*Ibid*.)

"[A] court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely 'to accommodate judicial convenience or because of court congestion.' [Citation.] A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty. [Citation.] Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.'" (*Romero*, *supra*, 13 Cal.4th at p. 531.)

In *Williams*, *supra*, 17 Cal.4th 148, our California Supreme Court described the factors a court should consider when exercising its section 1385 discretion in a Three Strikes case. It noted that in deciding whether to dismiss a strike "'in furtherance of justice . . . ,' or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Id*. at p. 161.) The sentence to be meted out to the defendant "is also a relevant consideration . . . in fact, it is the overarching consideration because the underlying purpose of striking prior conviction

allegations is the avoidance of unjust sentences." (*People v. Garcia* (1999) 20 Cal.4th 490, 500.)

It is the defendant's burden as the party attacking the sentencing decision to show that it was arbitrary or irrational, and, absent such showing, there is a presumption that the court ""acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."" (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) Such a discretionary decision ""will not be reversed merely because reasonable people might disagree."" (*Ibid*.) In other words, "[i]t is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony*, at p. 378.)

### B. The trial court did not abuse its discretion

This is not the extraordinary case imagined by our Supreme Court where there can be no doubt that the defendant, although a career criminal, nevertheless falls outside the spirit of the Three Strikes law. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.) There is little about Neufeld's case that suggests, much less compels, such a conclusion.

Among other things, the trial court considered the probation officer's report, which summarized Neufeld's criminal history. The report stated that Neufeld sustained three petitions as a juvenile, one of them for robbery. The report went on to state that "[a]s an adult, [Neufeld] has not done much better." In 1997, at the age of 22, Neufeld was convicted of burglary, grand theft, and receiving stolen goods for which he was

sentenced to a year in jail and 60 months felony probation. In 2001, while on probation, Neufeld was convicted of voluntary manslaughter for a killing that occurred in 1996; he was sentenced to 11 years in prison. After being released from prison in January 2008, Neufeld's conduct, in the words of the probation report, was "fraught with numerous parole violations," the first of which occurred in April 2008, just months after being released from prison. In addition, following his release from prison, Neufeld was convicted twice for driving under the influence, the first time in 2009; the second time in 2012. In light of his arrest for the 7-Eleven robbery, the probation officer concluded that Neufeld's "criminal behavior has not changed, in that, he continues to engage in theft-related behaviors. Moreover, there is a concern for the community's safety due to his propensity towards violence." The probation officer further noted that "[a]lthough the current incident may seem somewhat insignificant as far as the stealing of the candy bar, [Neufeld] does represent a considerable risk to the community."

Neufeld argues that the remoteness of his prior adult strike and his current efforts at becoming a productive and responsible member of society since being released from prison put him outside of the spirit of the Three Strikes law. However, as one of the leading cases in this field makes clear, *Williams*, *supra*, 17 Cal.4th 148, such facts are not enough to put a defendant outside the spirit of the Three Strikes law.

In *Williams*, *supra*, 17 Cal.4th 148, the defendant was charged with driving under the influence of phencyclidine (PCP) with three prior convictions for the same offense within the preceding seven years. (*Id*. at p. 153.) The trial court had vacated one strike finding (attempted robbery) and sentenced the defendant to a total term of nine years. (*Id*. at p. 157.) The Court of Appeal, finding an abuse of discretion in vacating the third strike, reversed; granting review, the Supreme Court affirmed the Court of Appeal. Both Neufeld and the defendant in *Williams* had multiple juvenile convictions on their record. (*Id*. at pp. 153–154.) The defendant in *Williams*, like Neufeld, had a lengthy history of criminal offenses—seventeen convictions or parole violations—as an adult, spanning the 15 years prior to his arrest for the instant offense. (*Id*. at pp. 154, 163–165.) However, as with Neufeld, the more serious offenses—that is, the convictions for attempted robbery

19

and rape that were alleged to bring the case within the Three Strikes law—had been committed by the defendant in *Williams* many years before the instant crime. The defendant in *Williams*, like Neufeld, had struggled with a drug problem. Like Neufeld, the defendant in *Williams* was still loved and supported by his family and evidently had a stable living arrangement. (*Id*. at p. 163.) However, our Supreme Court found that was not enough to put the defendant in *Williams* outside the spirit of the Three Strikes law. Summing up, the court wrote that in light of "the nature and circumstances of his present felony of driving under the influence, which he committed in 1995, and his prior conviction for the serious felony of attempted robbery and his prior conviction for the serious and violent felony of rape, both of which he suffered in 1982, and also in light of the particulars of his background, character, and prospects, which were not positive, Williams *cannot* be deemed outside the spirit of the Three Strikes law *in any part*, and hence may not be treated as though he had not previously been convicted of those serious . . . or violent felonies." (*Id*. at pp. 162–163, italics added.)

At the time of the instant robbery, Neufeld worked as an installer of solar power panels, which makes his theft of a $1.49 candy bar inexplicable. Moreover, Neufeld had been convicted and sent to prison for voluntary manslaughter, making his decision to turn and confront Kahlon over the candy bar that he had just stolen from Kahlon's store even more inexplicable. If Neufeld had truly turned a corner on his prior life as a violent criminal, he would not have stolen the candy bar and he certainly would not have elected to use fear and intimidation as a way to accomplish the theft. When the instant crime is viewed against the backdrop of Neufeld's conduct since being released from prison for voluntary manslaughter, we cannot say that the robbery was a completely aberrant act. Since being released from prison, Neufeld has not been a model citizen—he committed multiple parole violations and was convicted *twice* for engaging in activity that is dangerous not only to himself but to others, namely driving under the influence. Like the defendant in *Williams*, Neufeld failed to add "maturity to age." (*Williams*, *supra*, 17 Cal.4th at p. 163.)

In sum, we conclude on the record before us that the trial court did not abuse its discretion when it elected not to strike Neufeld's prior conviction for manslaughter. The court considered, weighed and balanced the instant offense against Neufeld's criminal history and his background, character, and prospects. As in *Williams*, *supra*, 17 Cal.4th 148, Neufeld's prior convictions indicated that the defendant "'had been taught, through the application of formal sanction, that [such] criminal conduct was unacceptable—but had failed or refused to learn his lesson.'" (*Id.* at p. 163.) Because Neufeld has failed to show that the trial court's decision was arbitrary or irrational, we must affirm.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


I concur:


CHANEY, J.

ROTHSCHILD, P. J., dissenting:

I respectfully dissent.

In order to commit a robbery, the perpetrator must "accomplish[]" the taking of another's property "by means of force or fear." (Pen. Code, § 211.) The perpetrator must not only use force or induce fear, but such force or fear must actually *cause* the victim to give up his or her property. (*People v. Welsh* (1936) 7 Cal.2d 209, 212; *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709, fn. 2.)

Here, there is no evidence that Neufeld used force to take the candy bar. He walked in to the convenience store unarmed, took the candy bar from a store shelf, and walked out. The store clerk, Rajpal Kahlon, stepped outside and called to Neufeld. Neufeld returned to the store and never hit or touched anyone.

As for fear, Kahlon testified that he "experienced the lowest level of fear that [he] could . . . describe," and rated the fear "1" on a scale of 1 to 10. This lowest level of fear is apparent in the video evidence of the incident. After Kahlon called Neufeld back to the store, they stood on opposite sides of the door's threshold. Eventually, as the majority states, Neufeld gestured to Kahlon to "come on," and raised his fists. But by that time, a customer had intervened and, by putting himself between Neufeld and Kahlon, effectively ensured that Neufeld's invitation to fight was no more than a gesture. The customer faced Kahlon, offered to pay for the candy, and told Kahlon to "forget it." Neufeld then walked away.

If this was the extent of the evidence, I might agree with the majority. Ordinarily, a jury could reasonably infer from the inducement of fear followed by the taking of the victim's property that the taking was accomplished by means of the fear induced. (*People v. Franklin* (1962) 200 Cal.App.2d 797, 798.) Here, however, that was not the extent of the evidence. Specifically, Kahlon testified that Neufeld did nothing that gave him cause for concern about trying to get the candy bar back; and the only reason he did not try to do so was because it was not the store's "policy to go and grab the candy from the customer; [the policy is] just to call law enforcement." Kahlon's low level of fear, therefore, did not play a part in his decision not to resist Neufeld's theft of the candy bar.

(See *People v. Welsh*, *supra*, 7 Cal.2d at p. 212 [the perpetrator must cause the victim to be "afraid to resist the taking" of the victim's property].)

The majority states that the record shows that Neufeld's "threat of force caused Kahlon to experience fear and to change his conduct." (Maj. op. *ante*, at p. 8.) First, they state that the "evidence is clear that Kahlon initially resisted the taking—he called out to Neufeld as he was about to leave the store without paying for the candy bar." (*Ibid.*) The evidence of such calling out, however, consists of Kahlon's testimony that he told Neufeld, "Excuse me. I thought maybe you[] forgot to pay for the candy." Kahlon explained that sometimes customers are in a hurry and forget to pay, and he "thought maybe that is what happened with him; he forgot to pay for the candy." Defendant simply ignored Kahlon and walked out. Kahlon's polite attempt to remind one whom he believed had simply forgotten to pay does not constitute resistance to the taking of property for purposes of robbery, nor does his subsequent call to Neufeld to return to pay for the candy.

The majority further states that Kahlon "stopped resisting the theft after Neufeld engaged in threatening conduct," and concludes that the jury could reasonably infer from Neufeld's and Kahlon's conduct that Kahlon called the police because he was afraid for himself and others. (Maj. op. *ante*, at p. 8.) I disagree. Although a reviewing court must accept all *reasonable* inferences in favor of the judgment, when, as here, the victim of a purported robbery affirmatively testifies that he declined to resist the taking of the property for a reason unrelated to any fear he experienced, the contrary inference that he acted because of such fear cannot be reasonably drawn. Without that inference, there is no substantial evidence supporting the jury's finding that the low level of fear Kahlon experienced caused him to not resist the taking. Defendant did not, therefore, take the store's property "by means of force or fear." (Pen. Code, § 211.) Although Neufeld committed a crime—the petty theft of a candy bar—he did not commit robbery.

The majority relies on *People v. Brew* (1991) 2 Cal.App.4th 99. In that case, the defendant interjected himself between a store cashier and her cash register, "causing the cashier to step back in fear." (*Id.* at p. 104.) The defendant then took $1,004 from the

2

register. (*Id.* at p. 103.) Significantly, the cashier testified at trial that "she stepped back from the register . . . *because she was 'scared.'*" (*Id.* at p. 104, italics added.) Based on such evidence, the court held that the evidence was sufficient to find that the crime against the cashier "was accomplished through the use of fear or intimidation." (*Id.* at p. 105.) Here, by contrast, Kahlon testified that the reason he stepped back, so to speak, was *not* because he was scared, but because of the store's policy not to physically stop thefts. Unlike the theft of cash taken in *Brew*, therefore, Neufeld's theft of the candy bar was *not* "accomplished through the use of fear or intimidation."

The other cases cited by the majority confirm the view that the taking must be accomplished *because of* the force or fear. In *People v. Anderson* (2007) 152 Cal.App.4th 919, for example, the defendant held a knife to the victim's throat and demanded the victim's wallet, which the "the victim gave . . . up willingly *out of fear*"; i.e., *because of* the victim's fear. (*Id.* at pp. 926, 946, italics added.) In *People v. Davison* (1995) 32 Cal.App.4th 206, the defendant and an accomplice approached the victim as her money was dispensed at an ATM. He told the victim to "'[s]tand back.'" The victim "followed the instructions because she 'felt they meant business when they said "Stand back,"' and she 'didn't know if they were going to hit [her] or pull a weapon on [her] or what was their plan.'" (*Id.* at p. 210.) The court concluded that "the record overwhelmingly establishes that [the victim] stepped back from the ATM *because* appellant's conduct induced fear in her." (*Id.* at p. 217, italics added.) In *People v. Mungia*, *supra*, 234 Cal.App.3d 1703, the court held that the defendant took the victim's purse by the use of force, but that the evidence was insufficient to show that the victim was afraid or that "fear allowed the crime to be accomplished." (*Id.* at p. 1709, fn. 2.) In *People v. Morehead* (2011) 191 Cal.App.4th 765, the court affirmed robbery convictions because the victims complied with the defendant's demand for money "*as a result of actual and reasonable fear that arose from the implicit threat of harm contained in his demands.*" (*Id.* at p. 775, italics added.) None of the cited cases support the majority's holding here—that a petty thief who gets away with a candy bar *because* the victim's store policy is not to stop such thefts has committed robbery.

I would therefore modify the judgment to reduce the conviction to the lesser included crime of theft, and direct the court to resentence Neufeld accordingly. (Pen. Code, § 1260; *People v. Enriquez* (1967) 65 Cal.2d 746, 749-750.)


ROTHSCHILD, P. J.

4