Filed 6/8/26  P. v. Parker CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E085571 |
| v. | (Super.Ct.No. FSB042580) |
| LARRY ALLEN PARKER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernadino County.  Michael A. Smith, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland and Arlene A. Sevidal, Assistant Attorneys General, Daniel Rogers and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

A jury convicted defendant and appellant Larry Allen Parker of second-degree murder (Pen. Code[1], §§ 187, 189) and found various sentence enhancements true.  On appeal, defendant contends the trial court abused its discretion by applying an incorrect legal standard under amended section 1385, subdivision (c)(2) when denying his request to dismiss a firearm enhancement.  We affirm.

FACTUAL BACKGROUND[2]

On or about January 10, 2003, Leandra Green and defendant were burglarized and robbed by two armed men.  The men ordered Green into the bathroom, beat up defendant, tied him up, and stole money and jewelry from him.  Green heard by word of mouth that Elvin Seay, Jr. (the victim), was the individual responsible for ordering the robbery.

A few days later, the victim and Leo Salcedo were talking and getting high together near defendant's motel room.  Defendant went out and told them they were not permitted to smoke in that area.  The victim told defendant, "[T]hat's why I had that gun to you."  Defendant interpreted this as meaning that the victim

---

[1]  All further statutory references will be to the Penal Code unless otherwise indicated.

[2]  On our own motion, we take judicial notice of our prior opinion in *People v. Parker* (Mar. 12, 2008, E042309 [nonpub. opn.]).  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)  This brief summary of the facts is based on the statement of facts set forth in that opinion.

was responsible for the robbery. Defendant went back into his room, grabbed a gun, then went back outside. He exclaimed something to the effect of, "[G]et the F out of there, I said there ain't no smoking [in the garage]." Immediately thereafter, defendant fired his gun several times. Neither Salcedo nor the victim had a weapon or attempted to hurt defendant. The victim sustained one gunshot wound from which he eventually died.

## PROCEDURAL BACKGROUND

A jury convicted defendant of second-degree murder (§ 187, subd. (a), count 1) and found true the allegations that, during the murder, he personally used a firearm (§12022.53, subd. (b)), personally discharged a firearm (§ 12022.53, subd. (c)), and personally discharged a firearm which proximately caused great bodily injury or death to someone other than an accomplice (§ 12022.53, subd. (d)). Although the record is unclear, it appears the trial court, in a bifurcated proceeding, found true the allegations that defendant was previously convicted of a strike offense and serious felony (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d)) and previously served two prior prison terms (§ 667.5, subd. (b)).

On January 18, 2007, the court sentenced defendant to a total term of 56 years to life in state prison, consisting of 30 years to life on count 1 (15 years to life, doubled pursuant to the strike), plus 25 years to life on the section 12022.53, subdivision (d) enhancement (the firearm enhancement), plus one year on the prison prior. The court either struck, or imposed and stayed, the other enhancements.

3

On May 2, 2023, defendant filed a petition for resentencing under former section 1170.03, subdivision (a)(1).[3] He submitted various documents in support of the petition, including certificates of completion for various counseling and self-help groups, records showing he had paid restitution, and support letters to the California Board of Parole Hearings. After counsel was appointed, the parties agreed that defendant had no basis to file a request for relief under section 1172.1 and construed his filing as a request for the prosecution to make an application for resentencing. The prosecution declined to do so. However, the parties agreed that defendant may be eligible to have his prison prior stricken and that defense counsel would file the appropriate motion.

On December 1, 2023, the court struck the prison prior, reduced defendant's sentence to 55 years to life, and scheduled a full resentencing hearing.

The prosecution filed a brief opposing resentencing, indicating it was opposed to striking defendant's prison prior and firearm enhancement. It attached a copy of this court's prior opinion affirming his conviction. The prosecution also discussed defendant's criminal history, which included two convictions for felony battery with a deadly weapon, a conviction for being a felon in possession of a firearm, and a conviction of voluntary manslaughter with a firearm enhancement. Also, between 2017 and 2022, defendant had four prison rules violations including use of a controlled substance and possession of a cellular phone.

---

[3] Effective June 30, 2022, former section 1170.03 was renumbered 1172.1. (Stats. 2022, ch. 58, § 9 (AB 200).)

Defendant filed a resentencing brief requesting the trial court to dismiss "any and all" sentence enhancements. He asked the court to consider his postconviction conduct, including his disciplinary record and record of rehabilitation. Defendant argued that he was a reduced risk for future violence upon release because of his age, positive attitude, and the amount of custody he had already served.

The court held a full resentencing hearing on January 24, 2025. At the outset, the court stated it had reviewed the parties' briefs, including the documents defendant submitted with his resentencing petition. Defense counsel submitted the matter. The prosecution highlighted that the current homicide offense was defendant's second such conviction, since he had a prior homicide conviction.

The court stated: "So in reviewing all of this, certainly [defendant] has made — or has participated in numerous programs towards rehabilitation in the prison system. But in looking at the totality of the picture, I think the nature of this offense, coupled with the nature of his priors, especially the manslaughter and use of a gun, [and] possession of a firearm, all indicate that if released, [defendant] would still pose a significant danger to the community. ¶ So in looking at his sentencing, he had one — he was convicted of second-degree murder. There was one strike, the manslaughter conviction, that doubled that term from 15 years to 30 years to life. And then the use — discharging a firearm causing death or great bodily injury was an additional term of 25 years to life. Court recognizes it does

5

have the discretion to strike that firearm enhancement or to reduce the firearm enhancement, but I don't see any circumstances that would justify that."

The court then ordered the previously imposed term of 55 years to life to remain in effect.

DISCUSSION

The Trial Court Did Not Abuse its Discretion

Defendant contends the trial court abused its discretion by applying an incorrect legal standard under section 1385, subdivision (c)(2), when declining to dismiss the section 12022.53, subdivision (d) firearm enhancement. Relying primarily on *People v. Gonzalez* (2024) 103 Cal.App.5th 215, (*Gonzalez*), defendant asserts the court erred by considering only whether he *currently* posed a danger to the public, rather than considering dangerousness at the time he would be released if the enhancement were dismissed. We see no abuse of discretion.

A. *Relevant Law*

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) amended section 1385 to add subdivision (c). (*People v. Coleman* (2024) 98 Cal.App.5th 709, 723.) Amended "[s]ection 1385, subdivision (c)(1) . . . provides that '[n]otwithstanding any other law, the court *shall dismiss an enhancement if it is in the furtherance of justice to do so*, except if dismissal of that enhancement is prohibited by any initiative statute.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.) Section 1385, subdivision (c)(2) provides in pertinent part, "In exercising its discretion under this subdivision, the court shall

6

consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety*."  (Italics added.)  "That provision means that if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances."  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296 (*Mendoza*).)

"In general, we review for abuse of discretion the trial court's decision not to strike a sentence enhancement under section 1385, subdivision (a)."  (*Mendoza*, *supra*, 88 Cal.App.5th at p. 298.)  Similarly, abuse of discretion is the proper standard of review for the trial court's determination that dismissal of an enhancement would endanger public safety.  (*Ibid.*)  "The abuse of discretion standard is highly deferential."  (*Ibid.*)  When, """"as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'""""  (*Ibid.*)

"We presume that the trial court acted to achieve legitimate sentencing objectives.  [Citation.]  The burden is on the party challenging the sentencing decision to show that the court abused its discretion.  [Citation.]  We may not presume error from a silent record.  [Citation.]  'Unless the record affirmatively

demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules.'" (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.)

In addition, as a general rule "'a trial court is presumed to have been aware of and followed the applicable law.' [Citations.] . . . Thus, where a statement of reasons is not [statutorily] required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order." (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114 (*Stowell*).)

B. *Forfeiture*

As a preliminary matter, we note the People argue that defense counsel did not raise the issue of the court failing to consider whether there would be a future threat to public safety if the firearm enhancement was stricken; thus, the claim is forfeited on appeal. However, assuming the issue is forfeited, because defendant contends his counsel was ineffective for failing to raise it, we will address the merits of the claim. (*People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6 [an appellate court has authority to reach a forfeited claim].)

C. *The Court Properly Found That Dismissal of the Firearm Enhancement Would Endanger Public Safey*

In *Gonzalez*, *supra*, 103 Cal.App.5th 215, the defendant argued that the trial court committed error by "focusing on whether he 'presently' and 'currently' endangered public safety rather than assessing whether, looking forward, public safety would be endangered due to an earlier release from prison (i.e., in 50 years

8

to life rather than in 75 years to life) if the enhancement was dismissed." (*Id.* at p. 224.) The *Gonzalez* court agreed with the defendant, explaining that, in deciding whether an enhancement's dismissal would endanger the public, sentencing courts should employ a "'forward-looking inquiry'" that not only accounts for the defendant's current dangerousness, but also considers "the date on which the defendant would be released under the revised sentence, and, in the case of an indeterminate sentence, the safety valve that exists due to the review by the Board of Parole Hearings." (*Id*. at p. 229.)

The *Gonzalez* court pointed out that the trial court "specifically explained, 'I think *presently* [Gonzalez] does represent a danger to society, *and for that reason* . . . I do think it is appropriate for the Court to impose an additional 25 years to life for the gun use enhancement.'" (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 231, italics added; see also, *id*. at p. 230 ["the trial court erred because it considered only whether Gonzalez *currently* posed a danger to the public"].) Because the trial court in *Gonzalez* relied on that single factor for its decision, and "gave no indication of how it would rule if it did not limit its inquiry to Gonzalez's current dangerousness" (*id*. at p. 231), the appellate court concluded that the trial court's error was prejudicial. (*Id.* at p. 232.)

Here, the trial court's comments at the sentencing hearing do not demonstrate it interpreted section 1385 in the manner rejected by the appellate court in *Gonzalez*. In *Gonzalez*, the trial court made explicit statements that demonstrated its "singular focus on whether the defendant *currently* poses a

9

danger." (*Gonzalez, supra*, 103 Cal.App.5th at p. 228.) The court expressly stated, "'I think *presently* [Gonzalez] does represent a danger to society, *and for that reason* . . . I do think it is appropriate for the Court to impose an additional 25 years to life for the gun use enhancement.'" (*Id*. at p. 224, italics added.) In contrast, the court's remarks in the instant case do not reflect that it expressly limited its analysis to defendant's current dangerousness. The court considered defendant's criminal history, as well as his current offense, after considering the mitigating circumstances raised by defense counsel. It specifically noted "the nature of this offense, coupled with the nature of his priors, especially the manslaughter and use of a gun, possession of a firearm," and it concluded, "all indicate that if released, [defendant] would still pose a significant danger to the community." The court did not specify, let alone limit, the temporal nature of defendant's dangerousness.

Given defendant's prior convictions and the violent nature of his current crime (i.e., shooting unarmed victims several times), the court could reasonably conclude defendant's early release would endanger public safety. (See *In re Coley* (2012) 55 Cal.4th 524, 562 [prior criminal history together with the nature of current offenses "may properly be viewed as an indicator of potentially significant future dangerousness"].) We recognize the law requires the court to consider dangerousness at the time of release and presume the court was aware of and followed the law. (*Gonzalez, supra*, 103 Cal.App.5th at pp. 230-231; *Stowell*,

10

*supra,* 31 Cal.4th at p. 1114.) Therefore, we see no abuse of discretion and reject defendant's argument based on *Gonzalez*.

Even if the trial court had erred by limiting its analysis to defendant's current dangerousness, reversal for resentencing is not warranted because the error was not prejudicial. As we previously explained, the "public safety exception" is an exception to the requirement to consider all the mitigating factors under section 1385, subdivision (c). (*Mendoza, supra*, 88 Cal.App.5th at p. 296.) Here, the court did consider the mitigating factors asserted by defendant. As such, the court's public safety finding was not necessary for the court to deny the request for further resentencing. As pointed out in *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), even where a court does not determine that a defendant would be a danger to public safety (at the time of release), the court retains discretion to deny a motion to strike or dismiss enhancements in the interests of justice. In *Walker*, the court stated that "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Id*. at 1029.) Here, "[t]he court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.5th 305, 310.) Thus, a future dangerousness discussion was not necessary in this case. Having considered all relevant factors, the court concluded that striking any enhancements and further resentencing was not in the interests of justice. We see no abuse of discretion in this determination.

11

Further, we note the *Gonzalez* court said, "[I]t is conceivable that, if the trial court holds a new sentencing hearing in which it does not limit its inquiry to [the defendant]'s current dangerousness, it [would] decide to exercise its discretion under section 1385, subdivision (c)(2) in a different manner." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 231.) The court here stated: "Court recognizes it does have the discretion to strike that firearm enhancement or to reduce the firearm enhancement, but I *don't see any circumstances* that would justify that." (Italics added.) Based on the court's statements and reasons given for its ruling, we see no reasonable probability that the court would exercise its discretion any differently on remand.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS

J.

We concur:

McKINSTER

Acting P. J.

MENETREZ

J.

12